[No. B011506. Second Dist., Div. Five. June 12, 1986.]

ARTHUR M. TRANTAFELLO, Plaintiff and Appellant, v.
MEDICAL CENTER OF TARZANA et al., Defendants and Respondents.

COUNSEL

Billips & Desimone, and Salvatore Desimone for Plaintiff and Appellant.

Rushfeldt, Shelley & McCurdy, Nancy Smith, Herzfeld & Rubin, Michael A. Zuk, Gittler & Wexler, Gregg J. Gittler and Naomi M. Scheck for Defendants and Respondents.

**OPINION**

**ASHBY, J.**—Plaintiff Arthur Trantafello brought this action for medical malpractice against defendants Kenneth Richland (who performed the surgery which is the subject of the suit), Seymour Gassner (who was present at the operation as an assistant surgeon), and the Medical Center of Tarzana (where the surgery was performed). The surgery was performed December 23, 1976; plaintiff filed his complaint September 14, 1981. The trial court granted summary judgment in favor of defendants on the ground the action was barred by the three-year statute of limitations in Code of Civil Procedure section 340.5. ■ Summary judgment is proper when the moving papers show the action is barred by the statute of limitations and the plaintiff is unable to raise any triable issue of fact for tolling the statute. (Code Civ. Proc., § 437c, subd. (c); *Scherer* v. *Mark* (1976) 64 Cal.App.3d 834, 843 [135 Cal.Rptr. 90].)

Code of Civil Procedure section 340.5 (hereinafter section 340.5) provides in pertinent part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time

for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."

Section 340.5 contains two statutes of limitations, both of which a plaintiff must satisfy. The one year period "after the plaintiff discovers, or through the use of reasonable diligence should have discovered[] the injury" incorporates the rule which was in effect prior to 1970, that the statute does not commence to run until the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, both the injury *and* its negligent cause. Now, however, this virtually open-ended doctrine is limited by the three-year period in section 340.5, commonly referred to as the "outside limit." Thus, in a case where the plaintiff could satisfy the one year period because of a delayed discovery of the negligent cause of the injury, the action would, nevertheless, be barred if not filed within three years of the date of injury, because the action must be commenced by whichever of the two dates "occurs first." (*Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 432-433 [186 Cal.Rptr. 228, 651 P.2d 815]; *Hills* v. *Aronsohn* (1984) 152 Cal.App.3d 753, 757-758, 760-762 [199 Cal.Rptr. 816].) The three-year period may, however, be tolled under the three circumstances provided in the statute.

In the instant case the matter was presented to the trial court at the hearing on the motion for summary judgment and has been briefed on appeal upon the assumption that plaintiff raised a triable issue of fact as to having satisfied the one year period, and that the three-year period is controlling. Defendants contend the action is barred by the three-year period; plaintiff contends he raised a triable issue of fact as to whether the three-year period was tolled by either "(2) intentional concealment" or "(3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person." With the issues so defined, we may briefly state the relevant facts.

Following an industrial injury to his neck, plaintiff was referred to Dr. Gassner, an orthopedic surgeon, who in turn referred plaintiff to Dr. Richland, an orthopedic surgeon, who, on December 23, 1976, performed a cervical diskectomy on plaintiff.

In order to maintain the space between the vertebras at C6-C7 where the disk was removed, Dr. Richland implanted a piece of acrylic substance, methyl methacrylate.

The theory of plaintiff's case is that the generally accepted practice in disk surgery is to implant a bone graft for this purpose; that the use of methyl methacrylate was an innovative procedure not generally accepted in the United States because of a high probability it will not properly fuse or heal to the bone and which has a high incidence of pseudo arthrosis. Plaintiff declared that prior to the surgery Dr. Richland did not advise plaintiff that he intended to use methyl methacrylate instead of a bone graft, nor of the innovative nature and risks of this procedure. Plaintiff contends that the use of methyl methacrylate in the surgery on his neck caused a protrusion anteriorly to his esophagus, leading to his choking and being unable to swallow.

■ ■ ■ ■ According to his own deposition, plaintiff began experiencing a swelling in his neck and a choking sensation by September of 1977, nine months after the surgery.[1] During several subsequent visits to Drs. Richland and Gassner in which plaintiff complained of these symptoms, Drs. Richland and Gassner never informed plaintiff, according to plaintiff's declaration in opposition to summary judgment, that methyl methacrylate had been used in the surgery. Plaintiff declared that not until March 24, 1981, when he was examined by Dr. Coulter, did he learn that methyl methacrylate had been used in his surgery and that "the presence of methyl methacrylate was the source of my neck pain and swallowing disorders."

On April 9, 1981, Dr. Coulter operated on plaintiff to remove the methyl methacrylate implant inserted by Dr. Richland in 1976, and to perform a bone fusion. Plaintiff filed his complaint on September 14, 1981.

Since the complaint was filed more than three years after the date of injury, defendants contend the action is barred by section 340.5. Plaintiff contends he has raised triable issues of fact under the "foreign body" and "intentional concealment" provisions for tolling the three-year statute.

### Foreign Body

■ There is no merit at all to plaintiff's claim under the tolling provision of section 340.5 for "(3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person." This clause applies where a foreign body is *inadvertently* left in the patient, such as a surgical sponge. (*Hills* v. *Aronsohn, supra,* 152 Cal.App.3d 753, 763-765; see also *Osborne* v. *County of Los Angeles* (1979)

---

[1] This triggered the three-year statute of limitations, since the term "injury" in the three-year clause of section 340.5 has been interpreted to mean the date the harm first manifests itself physically. (*Brown* v. *Bleiberg, supra,* 32 Cal.3d at p. 437, fn. 8; *Hills* v. *Aronsohn, supra,* 152 Cal.App.3d at p. 762.)

91 Cal.App.3d 366, 369, 370 [154 Cal.Rptr. 129].) Dr. Richland's declaration and deposition established indisputably that the acrylic was intentionally implanted during the surgery for the therapeutic *purpose* of maintaining the space between the vertebras. The deposition testimony of plaintiff's expert *did not create a triable issue of fact.* While Dr. Coulter was critical of the procedure, based on his opinion that there was no reasonable probability the acrylic would heal properly *to the bone*, and he stated his opinion that the procedure did not have a therapeutic *effect* on this patient and in fact resulted in injury, he had to concede that its *purpose* was therapeutic in that it was intended by Dr. Richland to maintain the space between the vertebras. Plaintiff's argument simply ignores the word "purpose" in the statute.

## INTENTIONAL CONCEALMENT

■ Plaintiff's argument on intentional concealment is more convoluted. He begins with the premise that prior to the surgery Dr. Richland did not advise plaintiff that methyl methacrylate would be used, or that this was an innovative or experimental procedure not generally accepted in the United States, or of the risks involved. The next step in his argument is that defendants never *subsequently* advised him that methyl methacrylate had been used. The problem lies in plaintiff's jump from these two premises to the conclusion that an issue of intentional concealment under section 340.5 has been made out. The issue in this case is not whether plaintiff can state a valid cause of action for a surgery performed without informed consent; the issue is whether he has timely filed such a cause of action. Plaintiff confuses the two.

Thus, plaintiff properly contends that the opinion of Dr. Coulter raises a factual issue whether Dr. Richland's procedure was innovative, and whether Dr. Richland was required to advise plaintiff prior to obtaining plaintiff's consent, of the innovative nature of the operation and the available options and dangers involved. (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 242, 243 [104 Cal.Rptr. 505, 502 P.2d 1]; *Clemens* v. *Regents of University of California* (1970) 8 Cal.App.3d 1, 9 [87 Cal.Rptr. 108].)[2]

---

[2]However, plaintiff's reliance on Health and Safety Code section 24170 et seq. is completely misplaced. Plaintiff says Dr. Richland never obtained the extremely detailed "informed consent" required by section 24173. These statutes are irrelevant. This act, which is known as the Protection of Human Subjects in Medical Experimentation Act (Health & Saf. Code, § 24170), deals with experiments on human subjects in the course of pure research. It applies "in the practice or research of medicine in a manner not reasonably related to maintaining or improving the health of such subject or otherwise directly benefiting such subject." (Health & Saf. Code, § 24174, subd. (a); see 15 Am.Jur. Proof of Facts 2d, Physician's Failure to Obtain Informed Consent to Innovative Practice or Medical Research, § 3, pp. 726-727; Health & Saf. Code, § 24171.) Here Dr. Richland used the acrylic im-

Assuming that Dr. Richland should have advised plaintiff prior to the surgery of the intended use of methyl methacrylate, this is just the first step in plaintiff's argument. In order to toll the statute of limitations, plaintiff had to show intentional concealment. The trial court recognized that plaintiff's effort to show intentional concealment really amounted to nothing more than the assertion that the original nondisclosure continued: (1) Dr. Richland should have advised me prior to the surgery that he was going to use methyl methacrylate; (2) he never told me after the surgery that he had used methyl methacrylate; (3) *therefore* there has been intentional concealment. The trial court properly concluded that intentional concealment requires something more than a mere continuation of the prior nondisclosure. In granting the motions for summary judgment, the court commented: "Intentional concealment is something more than a lack of informed consent. [¶] It would have to have occurred either at or subsequent to the time that the medical procedure was undertaken."[3] We agree.

In *Brown* v. *Bleiberg, supra,* 32 Cal.3d 426, cited by plaintiff, where the statute was held tolled by intentional concealment, the doctor made affirmative misrepresentations after the surgery as to the nature of the surgery and the reason why he performed it. The doctor allegedly falsely told the patient that the unexpectedly extensive surgery on her foot had been necessitated by his discovery of tumors there. (*Id.,* at p. 434.) The court expressly characterized the case as one of "affirmative concealment." (*Id.,* at p. 429.) In the course of its discussion the court also noted that the tolling provision for intentional concealment, enacted in 1975, was more restrictive than the tolling provision in the prior version of the statute, relating to failure to disclose. (*Id.,* at p. 432.)

Plaintiff did not show there was any issue as to an affirmative misrepresentation. Plaintiff conceded in his deposition that Dr. Richland never told him anything false about the surgery.[4]

---

plant not in the course of a medical research program but in a course of therapeutic treatment for plaintiff. His duty to inform plaintiff of the alleged innovative nature of the treatment did not arise from the Health and Safety Code provisions but from the general rules stated in *Cobbs* v. *Grant, supra,* and *Clemens* v. *Regents of University of California, supra.*

[3]Counsel for defendant Richland put it this way: "I think intentional concealment has to go further than argument over informed consent. [¶] Again virtually every malpractice case the plaintiff is going to allege that he didn't know what he was getting into and there was a lack of informed consent. I think intentional concealment has to go further that that. [¶] There is no indication that the medical records were altered, that Dr. Richland made any misrepresentations to this man after the surgery separate and apart from maybe a lack of informed consent on the initial surgery. [¶] Intentional concealment has to be in my mind be something after the event separate and apart from not adequately informing the patient."

[4]Plaintiff did state in his declaration in opposition to summary judgment that "[i]n March, 1981, during my last visit to Dr. Seymour Gassner, I was told by Dr. Gassner that the *bone* had regenerated and that it was pushing against the esophagus causing scar tissue on the

Finally, plaintiff's claim of intentional concealment was very narrowly based. He claimed only that defendants never disclosed that methyl methacrylate had been used as an implant instead of bone. But he conceded in his deposition that neither defendant ever told him that his throat and neck symptoms were not caused by the surgery of December 1976.[5] Furthermore, Dr. Gassner advised plaintiff as early as March 7, 1978, after a thyroid condition had been ruled out, that plaintiff might have "some protrusion [from the 1976 surgery] anteriorly pushing into the esophagus," so he advised plaintiff to see Dr. Richland. Plaintiff fails to show any concealment that his choking problems were related to his surgery. He claims only that he did not learn until March 1981 that the implant which was protruding on his esophagus was made of methyl methacrylate instead of bone. He does not show that defendants concealed the existence of a cause of action, whether defined as one for negligence or one for lack of informed consent.[6]

The trial court properly concluded plaintiff had raised no triable issues of fact for tolling the three-year statute of limitations.[7]

---

esophagus. At no time did Dr. Gassner indicate to me that the protrusion was methyl methacrylate." (Italics added.) The trial court properly concluded that this alleged statement was irrelevant because it did not occur until *after* the three-year limitation period had expired. The theory for tolling a statute of limitations for intentional concealment is that the defendant's false representations prevent the plaintiff from bringing the action before the period of limitations has run. (See *Bowman* v. *McPheeters* (1947) 77 Cal.App.2d 795, 804 [176 P.2d 745].)

[5]"Q. Did any doctor, including Dr. Richland or Dr. Gassner, ever tell you that your throat and neck symptoms which you apparently manifested after the surgery were not caused by the surgery or not related to the surgery of December, '76? [¶] A. No."

[6]*Cobbs* v. *Grant, supra,* 8 Cal.3d at pages 239-241, identifies two types of informed consent cases. Where the doctor performs a substantially different surgery than consented to, the action sounds in battery, which has a shorter statute of limitations than medical malpractice. (*Id.,* at p. 240; Code Civ. Proc., § 340, subd. (3); *Brown* v. *Bleiberg, supra,* 32 Cal.3d at pp. 431, fn. 1, 437.) The battery statute of limitations was tolled in *Brown* v. *Bleiberg, supra,* by *affirmative misrepresentations* which prevented the plaintiff from discovering the tort. (32 Cal.3d at pp. 433-436.)

Where the doctor fails to inform the patient of all the material risks and potential complications, the action sounds in professional negligence, which is subject to the statute of limitations in Code of Civil Procedure section 340.5, including the advantages of the delayed discovery doctrine but also the disadvantage of the three-year outside limit, extended only by the fraud, foreign body, and intentional concealment exceptions. (*Cobbs* v. *Grant, supra,* 8 Cal.3d at pp. 240-241; *Brown* v. *Bleiberg, supra,* 32 Cal.3d at p. 437.)

Plaintiff has not shown any affirmative misrepresentation or intentional concealment in this case.

[7]In light of this conclusion we need not consider defendant Gassner's contention that, independent of the statute of limitations, he was entitled to summary judgment based on his and Dr. Richland's declarations showing that Dr. Gassner was merely present as an assistant surgeon with no participation, authority, or responsibility for Dr. Richland's decision to use methyl methacrylate. (*O'Connor* v. *Bloomer* (1981) 116 Cal.App.3d 385 [172 Cal.Rptr. 128].)

The judgment is affirmed.

Feinerman, P. J., and Eagleson, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 28, 1986. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.