[No. C031821. Third Dist. Sept. 30, 2003.]

JACQUETTA MOORE et al., Plaintiffs and Respondents, v. STATE BOARD OF CONTROL, Defendant and Appellant.

372

COUNSEL

Bill Lockyer, Attorney General, Martin H. Milas, Silvia M. Diaz, and Jacob Appelsmith, Assistant Attorneys General, Marybelle D. Archibald, James M. Schiavenza, Steven Kaiser, James E. McFetridge and Noreen P. Skelly, Deputy Attorneys General, for Defendant and Appellant.

Eisen & Johnston, Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, Marian M. Johnston, Frederic L. Snowden; and Michael J. Siegel for Plaintiffs and Respondents.

## OPINION

**SCOTLAND, P. J.**—The Legislature has declared that it is in the public interest to assist residents of California in obtaining restitution for the pecuniary losses they suffer as a direct result of criminal acts. (Gov. Code, § 13950.) To this end, the Legislature established the Restitution Fund, formerly known as the Indemnity Fund, and enacted procedures by which crime victims may obtain compensation from the fund. (Gov. Code, § 13950 et seq.; further section references are to the Government Code unless otherwise specified.) A crime victim commences the process by filing an application with the California Victim Compensation and Government Claims Board, formerly the State Board of Control (the Board). (§§ 13951, 13952 et seq.)

In 1996, when crime victims Jacquetta Moore and Leticia Faxas applied for assistance from the Restitution Fund, former section 13961, subdivision (c), stated: "The period prescribed for the filing of an application for

assistance shall be one year after the date of the crime or one year after the victim attains the age of 18 years, whichever is later. The board may for good cause grant an extension of this time period *not to exceed three years after the date of the crime or three years after the victim attains the age of 18 years.*" (Italics added.) Moore and Faxas, both adults when they became crime victims, asserted that they should be relieved of their failure to comply within the three-year deadline because law enforcement officers failed to inform them of their potential eligibility for restitution from the fund.

This court issued an opinion on October 30, 2001, concluding that their applications for compensation were time-barred. The California Supreme Court granted review and transferred the matter to this court with directions to vacate our decision and "to reconsider the cause in light of Stats. 2002, chapter 1141."

That legislation recodified and revised the statutes governing the Restitution Fund. Among other things, it expanded the period in which an application for compensation can be deemed timely. The application has to be filed "within one year of the date of the crime, one year after the victim attains 18 years of age, or one year of the time the victim or derivative victim knew or in the exercise of ordinary diligence could have discovered that an injury or death had been sustained as a direct result of crime, whichever is later." (§ 13953, subd. (a).) But the Board has the discretion "for good cause [to] grant an extension of the time period." (§ 13953, subd. (b).) Unlike the old law, there is no maximum deadline for an extension of time in which to file an application for compensation from the Restitution Fund. (§ 13953, subd. (b).)[1]

For reasons that follow, we conclude the statutory revisions are prospective only and the eligibility of both Moore and Faxas for compensation is governed by "the law in effect as of the date [the] application was submitted." (§ 13959, subd. (d).)

---

[1] "The board may for good cause grant an extension of the time period in subdivision (a). In making this determination, the board may consider any relevant factors including, but not limited to, all of the following: [¶] (1) A recommendation from the prosecuting attorney regarding the victim's or derivative victim's cooperation with law enforcement and the prosecuting attorney in the apprehension and prosecution of the person charged with the crime. [¶] (2) Whether particular events occurring during the prosecution or in the punishment of the person convicted of the crime have resulted in the victim or derivative victim incurring additional pecuniary loss. [¶] (3) Whether the nature of the crime is such that a delayed reporting of the crime is reasonably excusable. [¶] (c) The period prescribed in this section for filing an application by or on behalf of a derivative victim shall be tolled when the board accepts the application filed by a victim of the same qualifying crime." (§ 13953, subds. (b) & (c).)

Applying the law in effect in 1996, when Moore and Faxas submitted their applications, we conclude the superior court erred in ruling that the Board could not deny as untimely an application for assistance when the victim established the application was not filed earlier because law enforcement failed to inform the victim of her potential eligibility for restitution from the fund. As we shall explain, amendments to the statutory scheme in 1993 eliminated that ground as a basis for relief from the three-year maximum period in which to submit an application to the Board.

Accordingly, we shall reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Board received an application for assistance from plaintiff Jacquetta Moore on January 4, 1996, seeking compensation as the result of an instance of spousal abuse that occurred over three years earlier, in October 1992. Moore requested relief from the one-year filing requirement stating that she had only recently learned of the victim assistance program.

The Board received an application for assistance from plaintiff Leticia Faxas on August 29, 1996, seeking compensation as the result of an instance of spousal abuse that occurred almost five years earlier, in December 1991. Faxas requested relief from the one-year claim filing requirement, stating that law enforcement did not tell her about the crime victim restitution program in 1991, and that she had only recently learned of the program.

The Board denied the claims on the ground they were untimely. Each plaintiff requested an administrative hearing. Following hearings, the claims were denied. The Board also denied requests for reconsideration.

The plaintiffs then filed a petition for writ of mandate and declaratory relief. The superior court held that, when a local law enforcement agency fails to provide a crime victim with information concerning the right to compensation, as required by former section 13968, subdivision (c), the Board is estopped from invoking the time limitations of former section 13961, subdivision (c), as a reason for denying an application for compensation. Hence, the court issued a peremptory writ of mandate requiring the Board to vacate its decisions denying compensation to plaintiffs and to reconsider their applications in a manner consistent with the court's ruling.

## DISCUSSION

### I

We begin by addressing whether the statutory changes enacted by Statutes 2002, chapter 1141, apply to this case. Under that legislation, there is

no maximum deadline for an extension of time granted to a victim of crime by the Board to apply for compensation from the Restitution Fund. (§ 13953, subd. (b).)

"A basic canon of statutory interpretation is that statutes do not operate retrospectively unless the Legislature plainly intended them to do so." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) "The Legislature, of course, is well acquainted with this fundamental rule, and when it intends a statute to operate retroactively it uses clear language to accomplish that purpose." (*DiGenova v. State Board of Education* (1962) 57 Cal.2d 167, 176 [18 Cal.Rptr. 369, 367 P.2d 865].)

Plaintiffs claim that (1) the time limit for submitting an application for compensation from the Restitution Fund is a statute of limitations, (2) statutes of limitations are procedural, and (3) procedural statutes are not subject to the general rule against retroactive application of a statute. We are not persuaded.

█ When the Legislature establishes a right or benefit that was unknown at common law and, in the same statute, establishes a time within which a claim to the right or benefit must be exercised, the time period is substantive and jurisdictional. (*Roberts v. Title Ins. & Trust Co.* (1936) 6 Cal.2d 373, 375 [57 P.2d 916]; *Williams v. Pacific Mutual Life Ins. Co.* (1986) 186 Cal.App.3d 941, 949 [231 Cal.Rptr. 234].) This is such a case. The time period for presenting an application for compensation from the Restitution Fund "was not a mere statute of limitations, but a condition upon which a new right was given to a special group, and upon which the exercise of that right depended." (Cf. *Adams v. Albany* (1954) 124 Cal.App.2d 639, 643 [269 P.2d 142].)

In any event, "[i]n deciding whether a statute may be given retroactive application, it is not significant whether the statute is labeled substantive or procedural in nature." (*Borden v. Division of Medical Quality* (1994) 30 Cal.App.4th 874, 880 [35 Cal.Rptr.2d 905].) Rather, what is determinative is the effect that application of the statute would have on substantive rights and liabilities. "If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears. [Citations.]" (*Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 394 [182 P.2d 159]; *Borden v. Division of Medical Quality, supra,* 30 Cal.App.4th at p. 880.)

█ Therefore, where the application of a new or amended statute of limitations would have the effect of reviving an already time-barred claim,

the general rule against retroactive application of the statute is applicable in the absence of a clear indication of legislative intent to the contrary. (*Barker v. Brown & Williamson Tobacco Corp.* (2001) 88 Cal.App.4th 42, 48 [105 Cal.Rptr.2d 531]; *Carr v. State of California* (1976) 58 Cal.App.3d 139, 147 [129 Cal.Rptr. 730]; *Singer Co. v. County of Kings* (1975) 46 Cal.App.3d 852, 866–867 [121 Cal.Rptr. 398].) And when the Legislature intends to revive time-barred claims it does so expressly. (See, e.g., *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1264 [109 Cal.Rptr.2d 611] [Code Civ. Proc., § 340.9]; *Liebig v. Superior Court* (1989) 209 Cal.App.3d 828 [257 Cal.Rptr. 574] [Code Civ. Proc., § 340.1]; *Battle v. Kessler* (1983) 149 Cal.App.3d 853, 858 [197 Cal.Rptr. 170] [Sts. & Hy. Code, § 6571].)

We have reviewed the statutes of 2002, chapter 1141, in its entirety and find no indication, either by express language or by reasonable implication, that the Legislature intended to revive claims for compensation from the Restitution Fund based upon prior applications that were time-barred when presented.

Instead, the enactment contains language to the contrary effect. Section 13959 requires the Board to grant a hearing to any applicant who wishes to contest a staff recommendation to deny a claim in whole or in part. Subdivision (d) of this section specifies that "[e]xcept as otherwise provided by law, in making determinations of eligibility for compensation and in deciding upon the amount of compensation, *the board shall apply the law in effect as of the date an application was submitted.*" (Italics added.) Plaintiffs submitted their applications in 1996 and, pursuant to the law in effect at that time, the claims were time-barred.

Plaintiffs argue that section 13959, subdivision (d), is limited to the substantive requirements of eligibility and measure of compensation which, they argue, do not include the time limits for submitting an application. Assuming for purposes of discussion that this is true, we are still left with the general rule against retroactive application of a statute to revive previously time-barred claims and by the absence of any express or implied indication in the new legislation that the Legislature intended a contrary result.

Accordingly, we conclude the statutory revisions that became effective on January 1, 2003, as a result of Statutes 2002, chapter 1141, are prospective only and do not affect our previous opinion in this case, which we now reiterate.

## II

The state's policy of compensating victims of crime for the pecuniary losses they suffered as a direct result of criminal acts was established in 1967.

(Stats. 1967, ch. 1546, § 1, pp. 3707–3709.) Originally, the legislation required that a claim be presented within one year; "no claim not so presented shall be considered by the Board of Control." (Former § 13962, subd. (c), added by Stats. 1967, ch. 1546, § 1, p. 3707.) At that time, local district attorneys were required to inform potentially eligible persons of such eligibility. (Former § 13965, subd. (a) added by Stats. 1967, ch. 1546, § 1, p. 3709.) In 1970, the legislation was amended to require investigating law enforcement agencies to provide forms to potentially eligible persons. (Former § 13965, subd. (a) as amended by Stats. 1970, ch. 389, p. 801.)

The statutory scheme was revised substantially in 1973, by legislation with an operative date of July 1, 1974. (Stats. 1973, ch. 1144, §§ 1–4, pp. 2348–2352.) The revisions included the enactment of former section 13961, subdivision (c), to provide: "The period prescribed for the filing of an application for assistance shall be one year after the date of the crime, unless an extension is granted by the board, except that such period may be extended by the State Board of Control for good cause shown by the victim." (Stats. 1973, ch. 1144, § 2, p. 2349.) The revisions also enacted former section 13968 in order to (1) give the Board authority to make rules and regulations to carry the law into effect; (2) impose a duty upon all licensed hospitals to prominently display, in their emergency rooms, posters giving notification of the existence and general provisions of the law; and (3) impose a duty on all local law enforcement agencies, pursuant to standards set by the Attorney General, to inform victims of violent crimes of the provisions of the law and to provide application forms to victims who desire to seek assistance. (Stats. 1973, ch. 1144, § 2, p. 2352.)

In 1976, the Court of Appeal, First Appellate District, rendered a decision in *Hartway v. State Board of Control* (1976) 69 Cal.App.3d 502 [137 Cal.Rptr. 199] (*Hartway*). In a brief opinion, the court held that a local law enforcement agency is in privity with the Board for purposes of the Restitution Fund and that the law enforcement agency's failure to inform a crime victim about the "victims of crime legislation" estops the Board from applying the one-year filing requirement. (*Id.* at p. 504.) The court concluded that its decision was in harmony with the 1973 revision of the law, which gave the Board the authority to extend the one-year filing period for good cause. (*Id.* at p. 505.)

The time requirements for filing a claim that were established in the 1973 revision of the law were retained by the Legislature until 1993. The Legislature then enacted legislation, effective October 4, 1993, stating: "In order to

maintain the solvency of the Restitution Fund, it is necessary that this act take effect immediately as an urgency statute." (Stats. 1993, ch. 780, § 15, p. 4303.)[2] Among other things, the measure amended former section 13961, subdivision (c), by adding provisions that (1) toll during the period of a crime victim's minority the one-year period for filing a claim, and (2) impose a three-year upper limit on the Board's authority to extend the period for filing a claim. (Stats. 1993, ch. 780, § 3, pp. 4292–4293.)

And in 1998, former section 13961, subdivision (c), was amended to further permit the Board to extend both the one-year and the three-year periods under the following circumstances not applicable in this case: "(A) The application is filed within one year from the date of the filing of an indictment, information, or complaint alleging the facts that gave rise to the application; and the prosecuting attorney recommends that the board find that the applicant cooperated with law enforcement and the prosecuting attorney in the apprehension and prosecution of the person charged with the crime, and the board so finds"; "(B) A victim is called to testify in a criminal proceeding adjudicating the facts that gave rise to the application; the application is filed within one year of the completion of the victim's testimony; and the prosecuting attorney recommends that the board find that the applicant cooperated with law enforcement and the prosecuting attorney in the apprehension and prosecution of the person charged with the crime, and the board so finds"; or "(C) The application is filed within one year of the time that a formal written decision is made by the prosecuting attorney not to prosecute, and the prosecuting attorney recommends that the board find that the applicant cooperated with law enforcement and the prosecuting attorney in the investigation and consideration of the crime for prosecution, and the board so finds." (Stats. 1998, ch. 447, § 1.)

Where, as here, the Legislature creates a right or entitlement that was unknown at common law and fixes a time limit within which the right must be exercised or the benefit claimed, the time limitation is a substantive or jurisdictional limitation on the right or benefit. (*Williams v. Pacific Mutual*

---

[2] Plaintiffs assert that the legislative history of the 1993 legislation, documentary evidence of which was submitted to the trial court, does not disclose the reason for the three-year outside limit for submitting an application. Plaintiffs point out that the legislation was introduced as Senate Bill No. 644, and that the three-year limitation was not added until the bill was amended in the Assembly before being sent back to the Senate. It is noteworthy, however, that it was the Assembly amendment that added the urgency clause to the bill, which would reinforce the indication that the three-year limitation was intended, at least in part, as a means of maintaining the solvency of the Restitution Fund. We cannot disregard the Legislature's express declaration of intent.

*Life Ins. Co., supra,* 186 Cal.App.3d at p. 949; *Adams v. Albany, supra,* 124 Cal.App.2d at pp. 642–643.)

There can be no doubt of the Legislature's authority to condition the exercise of a right or request for a benefit upon the timely submission of a claim. (*Scheas v. Robertson* (1951) 38 Cal.2d 119, 125–126 [238 P.2d 982]; *Rand v. Bossen* (1945) 27 Cal.2d 61, 65 [162 P.2d 457].) The issue, then, is one of legislative intent.

The legislatively prescribed three-year maximum time period for submitting an application for assistance from the Restitution Fund, except for circumstances not applicable here, was similar linguistically to the statute of limitations for asserting a cause of action for negligence against a health care provider. Code of Civil Procedure section 340.5 requires that a professional negligence action against a health care provider be commenced within one year of the date the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, but in no event later than three years after the injury unless the time is tolled for fraud, intentional concealment, or the presence of a foreign body with no therapeutic or diagnostic purpose or effect in the person of the plaintiff. The outside limit in Code of Civil Procedure section 340.5 has been held to be just that, an outside limit within which the action must be commenced or thereafter be barred. (*Donabedian v. Manzer* (1986) 187 Cal.App.3d 1021, 1026 [232 Cal.Rptr. 325]; *Trantafello v. Medical Center of Tarzana* (1986) 182 Cal.App.3d 315, 318 [227 Cal.Rptr. 84]; *Hills v. Aronsohn* (1984) 152 Cal.App.3d 753, 761 [199 Cal.Rptr. 816].) ■ An express legislative provision for circumstances which will toll a statute excludes, by necessary implication, all other exceptions. (*Fogarty v. Superior Court* (1981) 117 Cal.App.3d 316, 320 [172 Cal.Rptr. 594].) Accordingly, the outside limit of Code of Civil Procedure section 340.5 is not subject to delayed accrual or tolling except to the extent that the Legislature has expressly so provided. (*Donabedian v. Manzer, supra,* 187 Cal.App.3d at p. 1026; *Trantafello v. Medical Center of Tarzana, supra,* 182 Cal.App.3d at p. 318; *Hills v. Aronsohn, supra,* 152 Cal.App.3d at p. 761.)

The same reasoning applies to the former statute at issue in this case. In determining the meaning of a statute, we must give primary consideration to the usual and ordinary import of the statutory language. (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 [73 Cal.Rptr.2d 682, 953 P.2d 858]; *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1225 [23 Cal.Rptr.2d 397, 859 P.2d 96].) ■ The usual and ordinary import of former section 13961, subdivision (c), is that the maximum period of three years in which to submit an application for assistance was an outside period beyond which the Board could not extend the one-year period for submitting

an application. Other than in limited circumstances not at issue in this case, the only exception to the three-year period was that provided by the Legislature, i.e., tolling during the period of a crime victim's minority. In other words, except in very limited situations, even if a crime victim alleged good cause for not submitting an application within one year, he or she had to submit an application within three years or be barred.

This view of the former statute is consistent with standard rules of statutory construction. In determining the legislative purpose in amending a statute, we "must proceed in light of the decisional background against which the Legislature acted." (*People v. Dixon* (1979) 24 Cal.3d 43, 51 [154 Cal.Rptr. 236, 592 P.2d 752].) ■ Thus, we must presume the Legislature was fully aware of prior judicial interpretations of the law. (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944].) And since the very act of amending a statute demonstrates an intent to change the preexisting law, the presumption must be that it was intended to change all the particulars upon which we find a material change in the language of the act. (*Clements v. T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 232 [273 P.2d 5].)

The decision in *Hartway, supra,* 69 Cal.App.3d 502, stands out as the only judicial decision concerned with an extension of the time period for submitting an application for assistance from the Restitution Fund under former statutes. The Legislature acquiesced in that decision for many years. (See *Smith v. Fair Employment & Housing Com.* (1996) 12 Cal.4th 1143, 1158 [51 Cal.Rptr.2d 700, 913 P.2d 909] ("It is frequently said that '[w]hen a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute.' [Citations.]").)[3]

But the amendment of former section 13961, subdivision (c), in 1993, which placed an outside limit of three years on the Board's authority to extend the period and made no exception for the circumstance described in *Hartway,* is a strong indication of the Legislature's intent to preclude extension of the period for a situation like that in *Hartway.*

This interpretation also is consistent with the legislative intent expressed in the 1993 legislation. As we have noted, that legislation was enacted as an urgency measure in order to maintain the solvency of the Restitution Fund.

---

[3] Following the amendment of the law in 1973 to give the Board the authority to extend the one-year period for submitting an application for good cause and the 1976 decision in *Hartway, supra,* 69 Cal.App.3d 502, the Legislature amended former section 13961 in 1977, 1980, and 1983 without restricting the Board's authority. (Stats. 1977, ch. 636, § 1, p. 2126; Stats. 1980, ch. 1375, § 2, p. 4998; Stats. 1983, ch. 601, § 1, p. 2484; Stats. 1983, ch. 1310, § 2, p. 5290.)

Payments from the fund are intended to cover only pecuniary loss which is a direct result of a crime and for which the victim has not been, and will not be, reimbursed from any other source. (Former §§ 13959, 13960, subd. (d).) As the years pass following a crime, losses that might be claimed become more attenuated, and alternative sources of payment disappear. Years after a criminal incident, a crime victim may not remember information and advice given by law enforcement authorities at the time of the crime. Law enforcement personnel, who may have responded to hundreds of incidents in the interim, would likely be unable to recall whether particular information was provided to a specific victim. Under these circumstances, to extend the three-year outside limit for submitting a claim whenever a crime victim asserts that he or she was not informed of the victims-of-crime legislation by law enforcement authorities, would essentially create open-ended liabilities upon the Restitution Fund. This would contravene the Legislature's intent of maintaining the solvency of the fund by, among other things, establishing an outside limit for the submission of claims.

In light of our interpretation of the amendment enacted in 1993, we need not resolve the parties' dispute over whether the decision in *Hartway, supra,* 69 Cal.App.3d 502, is an appropriate application of estoppel. We note, however, that as an estoppel case, the *Hartway* decision is at least on the fringe.

Estoppel arises out of the rule that "[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.) The essential ingredients of an estoppel are (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct be acted upon, or must so act that the other party has a right to believe that it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely on the conduct to her injury. (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 28 [157 Cal.Rptr. 706, 598 P.2d 866].) Estoppel may not be applied where any one of these elements is missing. (*Hair v. State of California* (1991) 2 Cal.App.4th 321, 328 [2 Cal.Rptr.2d 871].)

The essential elements of estoppel are interrelated. Thus, for example, although estoppel usually is based on affirmative conduct (cf. *Becerra v. Gonzales* (1995) 32 Cal.App.4th 584, 597 [38 Cal.Rptr.2d 248]), silence in the face of a duty to speak may support estoppel in some situations. (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 891 [3 Cal.Rptr.2d 597].) But, in view of the fact that all elements of estoppel must be established, silence—even in the face of a duty to speak—does not

automatically establish estoppel. Since it is necessary to also show such things as an intention to induce reliance and actual justifiable reliance, silence as the basis for estoppel usually requires a showing of special circumstances, such as a confidential or fiduciary relationship or an undertaking to provide advice by one who claims to be informed and knowledgeable in the matter. (See *Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 308 [61 Cal.Rptr. 661, 431 P.2d 245].)

█ Estoppel may become more difficult to establish where the conduct or omission relied upon was committed or omitted by a party other than the party to be estopped. Where a governmental entity is involved, the proof necessary for estoppel includes proof of an agency relationship between the governmental entity to be estopped and the person or entity that made the act or omission on which the estoppel is based. (*Hill v. Newkirk* (1994) 26 Cal.App.4th 1047, 1058 [31 Cal.Rptr.2d 859]; *Johnson v. San Diego Unified School Dist.* (1990) 217 Cal.App.3d 692, 701 [266 Cal.Rptr. 187].) Such a relationship is not established simply because two separate governmental entities each have responsibilities under a particular statutory scheme. (*City and County of San Francisco v. Grant Co.* (1986) 181 Cal.App.3d 1085, 1092 [227 Cal.Rptr. 154].)

█ Even where elements of an estoppel are otherwise established, the doctrine cannot be applied against a governmental entity when to do so would defeat the effective operation of a policy adopted by the Legislature to protect the public. (*Longshore v. County of Ventura, supra*, 25 Cal.3d at p. 28.) In this light, it has been held that an unauthorized promise by an employee cannot be grounds for an estoppel against his or her governmental employer where the means and limitations upon the entity's power to act are prescribed by statute. (*Page v. City of Montebello* (1980) 112 Cal.App.3d 658, 669 [169 Cal.Rptr. 447].)

While these factors may cast doubt on the decision in *Hartway* as an estoppel case, we have no doubt that the *Hartway* decision is subsumed within the Board's authority to extend, for good cause, the one-year period for submitting an application for assistance. That decision was rendered after the Legislature had acted to give the Board authority to extend the one-year period, and the decision noted it was in harmony with said authority. (*Hartway, supra*, 69 Cal.App.3d at p. 505.) The Legislature acquiesced in that decision for years.

However, the issue here is not whether *Hartway* provided a good cause basis for extension of the one-year period, but whether it also required extension of the three-year outside period from which the Legislature had excepted only the period of a crime victim's minority and other very limited circumstances not present in this case.

For the reasons stated above, we conclude that, under the statutes in existence when plaintiffs applied for compensation from the Restitution Fund, the three-year maximum period for the submission of an application could not be extended by a claim that law enforcement officers failed to advise the victim about her potential eligibility for relief from the Restitution Fund.

█ Plaintiff Moore, an adult at the time she was victimized, submitted her application for assistance more than three years after the date of the crime against her. Plaintiff Faxas, also an adult when she was victimized, submitted her application almost five years after the crime against her. In support of their requests for an extension of time to file applications for assistance, they asserted that law enforcement officers who investigated the crimes did not advise them of the restitution program and that the plaintiffs had only recently learned of the program. Neither plaintiff presented any other evidentiary basis or legal theory in support of a request to file a late application. Because, under the plain language of the statute, the failure of investigating officers to tell plaintiffs about the program is not cause to disregard the three-year outside time limit for submitting an application, the Board correctly denied the applications as untimely.

## DISPOSITION

The judgment is reversed. The superior court is directed to vacate its order issuing a peremptory writ of mandate in favor of plaintiffs and to enter a new order denying plaintiffs' petition. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 27(a).)

Raye, J., and Morrison, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 23, 2003.