Filed 3/20/14  Mukangoga v. Loma Linda University CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ELYVANIE MUKANGOGA, | |
| Plaintiff and Appellant, | E055916 |
| v. | (Super.Ct.No. CIVDS1009170) |
| LOMA LINDA UNIVERSITY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Donna G. Garza, Judge.  Affirmed.

Elyvanie Mukangoga, in pro. per., for Plaintiff and Appellant.

Clayson, Mann, Yaeger & Hansen and Roland C. Bainer for Defendant and Respondent.

Plaintiff and appellant Elyvanie Mukangoga appeals from judgment on her action for breach of contract.  The trial court granted the motion of defendant and respondent Loma Linda University (LLU) for summary judgment on the ground that the statute of limitations had run on her claims.  Plaintiff appeals, contending the ruling was in error.

1

Because the undisputed facts establish that the contractual relationship was ended no later than September 12, 2005, when LLU foreclosed the possibility that plaintiff could obtain a Bachelor of Science degree, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

Seeking a Bachelor of Science degree in nursing, plaintiff enrolled as a sophomore in Loma Linda University's School of Nursing (LLUSN) for the fall quarter commencing September 2000. Within the material plaintiff received upon enrollment was a student handbook, which informed her that LLUSN required a minimum grade of C (2.0) for "nursing and required cognate courses." Anything less was termed a "provisional grade," and must be repeated with a C grade or higher. A student receiving a provisional grade was placed on probation and was classified as a provisional student until the deficiency was removed. A student may retake a class only once to clear a provisional grade; if the course was successfully repeated, the probation status was removed and the student was returned to regular status. A nursing student's enrollment "will be terminated" if a student received two provisional grades in required classes. A student terminated for receiving a second provisional grade "may be considered for reinstatement" upon completing course work assigned by the Academic Review Committee. A third provisional grade would "result in the student's termination" from LLUSN.

Plaintiff attended LLUSN during the fall term, which occurred from September 2000 to December 2000. In December 2000, plaintiff petitioned to receive incomplete grades in all of her classes; to clear the incomplete grades, she was required to complete

various final exams and assignments. At the completion of the fall semester, plaintiff's grades included a C- (1.7), received in her "Study of Physical Assessment" class. She was informed by letter dated October 30, 2001, that she was on "academic provisional status." Plaintiff took a leave of absence during the winter term in February 2001 until the fall term of 2001. Between September 2001 and December 2001, plaintiff retook the Study of Physical Assessment class, receiving a B grade. On January 1, 2002, plaintiff signed an acknowledgement that she had received a copy of the 2002 LLU handbook, which contained the policy regarding minimum grades.[1]

Plaintiff, a refugee from Rwanda and single parent to three children, experienced emotional and financial problems while attending LLUSN. She received a second C- (1.7) "provisional" grade in her "Health Promotion" class during the January 2002 through March 2002 winter term. LLUSN notified her by letter dated March 21, 2002, that "by policy, this means you will not be able to continue in clinical nursing courses at [LLUSN]. However, the Academic Review Committee re-viewed your situation and voted that you could continue with clinical courses but you may take only one clinical

---

[1] The excerpted portion of the handbook attached as an exhibit to defendant's motion for summary judgment reads: "A grade of C (2.0) is the minimum passing grade for nursing and required cognate courses. Required cognates include: developmental psychology, epidemiology, nutrition, sociology, and statistics. Each nursing course and/or required cognate in which a student receives a C- or below must be repeated. A nursing course may be repeated only once. A student with a C- or below in a nursing or required cognate is placed on probation. The California Board of Registered Nursing requires all courses used for a degree must be completed with a minimum passing grade of C." Nothing in defendants exhibit provided to the trial court mentions provisional grades or dismissal from the program, although plaintiff herself provided the subsequent page referring to those consequences as an exhibit attached to her opposition to the motion.

course at a time." The letter further warned her "[a]nother provisional grade would drop you from [LLUSN]."

After petitioning the Academic Review Committee, plaintiff was allowed to retake the Health Promotion class to clear the second provisional grade; she achieved a grade of B-. During the spring 2003 term, plaintiff missed her "Home Health Nursing" midterm exam but was allowed to take it later to accommodate difficulties experienced due to stress and depression. Despite the accommodation, plaintiff received a failing grade in Home Health Nursing, because she missed the final exam and did not turn in her clinical report. On June 16, 2003, plaintiff wrote to Dr. Helen King, the dean of LLUSN, requesting she be allowed to take the final exam over the summer, and for the instructor to accept her clinical report. Her request was not granted.

Associate Dean Marilyn Herrmann notified plaintiff by letter dated June 23, 2003, that she would "not be able to continue [her] study of nursing at [LLUSN]." Plaintiff was informed in November 2003 by a phone call from Associate Dean Herrmann that she could not continue in the Bachelor's program but could obtain an Associate's degree. Plaintiff understood then that she could not continue in the Bachelor's program. Plaintiff filed a grievance over her dismissal from the Undergraduate Nursing Program; it was denied on July 30, 2003, and affirmed on review on March 5, 2004. Plaintiff then petitioned to be allowed to take the final exam to clear her third provisional grade in Home Health Nursing, or to be given an incomplete in the class; the request was denied by the Academic Affairs Committee on June 11, 2004. At this time, plaintiff knew that she could obtain an Associate's degree

4

from LLU, but wanted only a Bachelor's degree. On April 12, 2005, plaintiff met with Associate Dean Herrmann to discuss possible terms on which plaintiff might be permitted to return to the Bachelor of Science program. Plaintiff requested readmission to LLUSN's Bachelor of Science program on April 27, 2005. The request was denied by Dean King on May 25, 2005, with respect to the school's fall 2005 term. A subsequent request to be readmitted to LLUSN's Bachelor of Science in Nursing program was denied by letter dated September 12, 2005.

LLUSN had terminated plaintiff from the Bachelor of Sciences degree program, but suggested that she continue work toward an Associate degree in Nursing. By letter dated March 28, 2006, Associate Professor Dolores Wright, the instructor for the Home Health Nursing class that plaintiff had failed, offered plaintiff two options toward completing that class for an Associate degree: she could take a "challenge or equivalency exam" for her remaining credits at a cost of "one-half of regular tuition upon passing the challenge exam," or she could retake the class in the fall 2006 term. On July 3, 2006, Association Dean Herrmann wrote to plaintiff to give a deadline of August 1, 2006, for plaintiff's response to the offer of schooling towards an Associate's degree.[2] Plaintiff declined both options in a meeting with Associate Dean Herrmann and Associate Dean Dynnette Hart on August 2, 2006; she had no interest in an

---

[2] On July 11, 2006, plaintiff was evicted from LLU student housing, where she had lived since August 2001. Housing at LLU was provided only to students and employees. There is no dispute that plaintiff was enrolled as a student when she was initially placed in student housing.

5

Associate degree. Plaintiff became "upset" at the meeting and was escorted out of the office. There does not appear to be any further contact between the parties.

On July 2, 2010, plaintiff, in pro. per., filed a form complaint for breach of contract and intentional infliction of emotional distress. On July 22, 2010, defendant responded to plaintiff's complaint by filing a demurrer and motion to strike. On August 25, 2010, the demurrer was sustained; the motion to strike was found moot due to the ruling on the demurrer. Plaintiff was granted 30 days to amend. Plaintiff's first amended complaint (FAC) was filed by retained counsel on September 27, 2010. The FAC contained five causes of action: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) specific performance, (4) common count (money paid and services not rendered), and (5) negligent infliction of emotional distress. Defendant filed a responsive demurrer and motion to strike on October 22, 2010, with a hearing date of December 29, 2010. On December 17, 2010, plaintiff's attorney withdrew from the case. On December 29, 2010, the court sustained defendant's demurrer as to plaintiff's fifth cause of action for negligent infliction of emotional distress without leave to amend. On the same date, the court sustained defendant's motion to strike portions of the FAC on the ground personal injury damages were not appropriate for a breach of contract cause of action. Trial was set for August 17, 2011, but did not go forward as plaintiff was seeking to replace her original counsel; trial was continued to February 2, 2012. A substitution of attorney was filed on September 12, 2011. On September 30, 2011, defendant moved for summary judgment.

In ruling upon the motion, the trial court found that the case rested upon a written contract, and found that the contract was breached on June 23, 2003. In its minute order announcing the decision, the trial court found that equitable tolling was not available to plaintiff and that "[w]aiting nearly four years to file this action is not reasonable." Judgment was entered in favor of LLU on February 2, 2012; LLU was awarded $1,343 in costs.

## DISCUSSION

Plaintiff contends the trial court erred in finding there was no genuine issue of material fact about the date of the breach of contract. In view of the fact that the purpose of the educational contract was for plaintiff to obtain a Bachelor of Science degree in nursing, we find that review of the facts in the light most favorable to plaintiff places the latest possible date of the breach as September 12, 2005, which is too late to save plaintiff's suit from the statute of limitations. We must affirm the order granting summary judgment to defendant.

In an appeal from a summary judgment, the order granting the motion for summary judgment is reviewed de novo. (*Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 474.) A motion for summary judgment is properly granted where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc.,

7

§ 437c, subd. (c).)[3] A defendant meets "his or her burden of showing that a cause of action has no merit if that party has shown . . . that there is a complete defense to that cause of action." (§ 437c, subd. (o)(2).) If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Ibid*.) "The papers of the moving party are strictly construed and those of the opponent liberally construed, while any doubts as to the propriety of the motion are resolved in favor of the opposing party. [Citation.]" (*Jane D.* v. *Ordinary Mutual* (1995) 32 Cal.App.4th 643, 649.) The responsibility of the trial court is to discover whether the litigants possess evidence that would require the weighing procedure of a trial. (*Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1478.)

Summary judgment is proper when the moving papers show the action is barred by the statute of limitations and the plaintiff fails to raise a triable issue of fact supporting a contrary conclusion. (§ 437c, subd. (c); *Trantafellow* v. *Medical Center of Tarzana* (1986) 182 Cal.App.3d 315, 317.) Determination of the validity of a defense based upon a statute of limitations is normally a question for the trier of fact. (*Van Dyke v. Dunker & Aced* (1996) 46 Cal.App.4th 446, 451.) However, summary judgment is permissible if the trial court can draw only one legitimate inference from uncontradicted evidence regarding the limitations question. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582.) "All doubts as to whether any material, triable, issues

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

8

of fact exist are to be resolved in favor of the party opposing summary judgment." (*Cochran v. Cochran* (2001) 89 Cal.App.4th 283, 287.)

In contract actions, the cause of action generally accrues at the time of the breach. (*Whorton v. Dillingham* (1988) 202 Cal.App.3d 447, 456.) The education contract at issue was an executory contract. "An executed contract is one, the object of which is fully performed. All others are executory." (Civ. Code, § 1661.) The statute of limitations on a cause of action for breach of an executory contract generally does not begin to run until the time for full performance has arrived. As our Supreme Court has explained, in an executory contract, "where the parties did not mutually abandon or rescind it upon a breach or successive breaches, the injured party could wait until the time arrived for a complete performance by the other party and then bring an action for damages for such breaches. [Citation.] Respondent was not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but had his election to still rely on it, and the statute of limitations could not begin to run until it had made its election. [Citations.]'" (*Union Sugar Co. v. Hollister Estate Co*. (1935) 3 Cal.2d 740, 745-746.) If one party has failed its obligations and there are subsequent communications regarding the contract, the intent and effect of those contacts may raise issues of fact as to whether or not the breach is complete. (*Tin Tin Corporation v. Pacific Rim Park, LLC* (2009) 170 Cal.App.4th 1220, 1234.)

Defendant's theory is that the education contract terminated either on June 23, 2003, when plaintiff was informed that she would not be able to continue at LLUSN, or on July 30, 2003, when she was notified the grievance committee had voted to uphold

9

that decision. The trial court agreed, finding that the contract was breached on June 23, 2003. Review of the record compels the conclusion that even the most generous computation of the date of breach fails to prevent the imposition of the limitations bar.

Neither party disputes that there was an "education contract." Plaintiff paid a sum of money for her study at LLU and agreed to meet certain educational achievement standards. Defendant argues, without contraversion, that "[t]he catalogues, bulletins, circulars, and regulations of the institution" make up the contract between the parties. In support of that view, defendant has provided excerpts of a student handbook and an acknowledgement signed by plaintiff that she received a copy of the 2002 student handbook and agreed to be bound by its terms and conditions. Plaintiff was accepted into the school of nursing as a sophomore, based "upon [her] academic achievement in [her] course work to date." Her acceptances do not specify a course of study or a specific degree. However, plaintiff herself has made clear that the sole acceptable purpose of the educational contract was the attainment of a Bachelor's degree in nursing.

In granting summary judgment, the trial court found that LLU had a right to terminate plaintiff's status as a student and did so, according to the terms of the contract, on June 23, 2003. It gave no weight to the subsequent dealings between the parties. When plaintiff received her third provisional grade she was removed from the Bachelor of Sciences program. The student handbook, which sets the contract terms between the parties, states "[a] third provisional grade will result in the student's termination." LLUSN continued to work with plaintiff to help her gain an Associate's

degree, but those efforts were not required by or part of the contract between the parties. Plaintiff had no interest in pursuing any other degree and did not comply with any suggested procedure that would lead to an Associate's degree. If she could not obtain a Bachelor's degree, Plaintiff had no interest in further schooling.

The trial court considered the June 23, 2003, notification of termination as the breach date of the education contract. Plaintiff argues that it was at most an anticipatory breach. "[T]o pinpoint the time of an alleged breach for purposes of the statute of limitations, it is necessary to establish what it was the defendant promised to do, or refrain from doing, and *when its conduct diverged* from that promise." (*McCaskey v. California State Automobile Association* (2010) 189 Cal.App.4th 947, 958.) Plaintiff suggests that the contractual relationship between the parties remained active until she was escorted from the dean's office in August 2006. That is not the case. Looking at the nature of the promises between the parties, it is clear that the breach happened much earlier.

Petitioner sought to obtain a Bachelor of Science degree in nursing. It is clear from her responsive filings and her declarations that no other outcome was acceptable. LLU offered her schooling to reach that goal, but when petitioner failed to achieve the required measure of academic success they twice placed her in remedial programs before removing her from the Bachelor degree program. Up to that point, LLU had worked to assist her in overcoming her academic difficulties, but plaintiff was terminated after she failed Home Health Nursing. Because this is an educational contract, because the termination was subject to administrative grievance and appeal,

11

and because LLU offered, without contractual obligation to so do, to assist plaintiff in obtaining an Associate's degree, the exact date of the breach is open to reasonable dispute. It is beyond dispute, however, that the contractual relationship between the parties was completely severed by September 12, 2005. Plaintiff had not attended classes at LLU in over two years by that time, and it was clear that LLU would no longer allow her to pursue a Bachelor's degree there.

Petitioner was notified of her termination on June 23, 2003. Her grievance was denied a month later, and that decision was affirmed upon review in March, 2004. She later met with Associate Dean Herrmann to learn how she might be able to continue with the Bachelor of Science degree program. She twice reapplied to the program and was twice denied, the final time on September 12, 2005. After that date, LLU did not offer any terms or conditions through which petitioner could continue or restart her study towards a Bachelor's degree.

Whether the educational contract was ended by giving notice in June 2003, through the final denial of the grievance in 2004, or by the successive denials of plaintiff's requests for readmittance in 2005, it had unquestionably ended before the July 2006 date necessary for the filing of the complaint to avoid the statute of limitations bar. Although we may not agree with the trial court that the contract was severed beyond question as of June 2003, LLU had unambiguously proclaimed its intent to deny plaintiff further education toward a Bachelor's degree no later than September of 2005. Accordingly, it is clear that plaintiff's action is barred by the statute of limitations. A correct result was reached; we affirm.

12

## DISPOSITION

The judgment is affirmed.  Each side is to bear its own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

KING
J.

13