[No. A105780. First Dist., Div. Five. Oct. 26, 2004.]

EDWARD REIDY, as Trustee, etc., Plaintiff and Respondent, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication, with the exception of part II.

**COUNSEL**

Law Offices of Andrew M. Zacks, Andrew M. Zacks and James B. Kraus for Plaintiff and Respondent.

Dennis J. Herrera, City Attorney, and Andrew W. Schwartz, Deputy City Attorney, for Defendants and Appellants.

**OPINION**

**JONES, P. J.**—The City and County of San Francisco (City) appeals a judgment granting the petition for writ of mandate by which respondent Edward Reidy, as trustee of the Olga Eugenia Lindemood Testamentary Trust (Trust), sought an order directing the City to expunge all notices recorded against three hotels owned by the Trust that referred to the City's Hotel

Conversion and Demolition Ordinance (HCO) and/or Residential Hotel Sprinkler Ordinance. Our review focuses on the preemptive effect of the Ellis Act (Gov. Code, § 7060 et seq.), in light of the 2000 amendments to Government Code section 7060.7, after the owner of the hotels has invoked the Ellis Act to withdraw the properties from residential rental use, but before an owner seeks approval of a proposed new use.

## BACKGROUND

The Trust owns three buildings in San Francisco that have been used as residential hotels: 2201 Baker Street, 2820 Scott Street, and 2824 Scott Street. The latter two buildings are collectively known as the Marine View. Edward Reidy (Reidy) is the court-appointed trustee for the Trust.

In 1987 the City issued a certificate of use authorizing the operation of 13 residential units at 2201 Baker Street. In 1991, the City authorized certificates of use for 16 residential units at 2820 Scott Street and 11 residential units at 2824 Scott Street.

On October 8, 2002, Reidy filed with the City's Residential Rent Stabilization and Arbitration Board a "Notice of Intent to Withdraw Residential Units from the Rental Market" regarding the three properties. Such a filing is known as an Ellis Act filing, after the statute that governs the procedure for withdrawing property from residential rental use (Gov. Code, § 7060 et seq.).

The same day all tenants were served with a notice to quit before February 5, 2003. The Ellis Act and the City's Residential Rent Stabilization and Arbitration Ordinance require a property owner to give tenants 120 days' notice of the termination of their tenancy. The notice period is extended to one year if the tenants are elderly or disabled.

On January 9, 2003, Reidy recorded a "Memorandum of Notice Regarding Withdrawal of Rental Unit from Rent or Lease" with the City's Assessor-Recorder.

On February 13, 2003, Rosemary Bosque, chief housing inspector with the City's Department of Building Inspection, sent the Trust a "Notice to Comply" regarding the three properties. The notice stated, in pertinent part: The HCO "does not permit the certified number of residential units [in the Trust's three properties] to be converted to another use without complying with the permit to convert and the one-for-one replacement requirements [] of the HCO. . . . [A]n Ellis Act filing subsequent to January 1, 2000 does not relieve [the Trust] of any obligation under the HCO. [¶] Also be aware that residential hotels that have a total of 20 or more guest rooms must comply

with the Residential Hotel Sprinkler Ordinance [Sprinkler Ordinance]. [¶] Be advised that all the requirements stated above must be complied with whether [the properties] are vacant, damaged or partially occupied."

On June 17, 2003, Frank Chiu, director of the City's Department of Building Inspection, sent the Trust two "Notice[s]" superseding and rescinding the February 13, 2003 "Notice to Comply." One notice concerned 2201 Baker Street, and the other notice concerned the two Scott Street buildings. Other than noting that the Baker Street property was not subject to the Sprinkler Ordinance because it had fewer than 20 guest rooms, the notices reiterated the February 13 notice. The June 17 notices were recorded with the City's Assessor-Recorder.

On September 22, 2003, Reidy petitioned for a writ of mandate (Code Civ. Proc., § 1085). As amended, his petition made the following allegations: The June 17, 2003 recorded Notices to Comply constituted injurious clouds on the title of the three properties because they would interfere with his ability to finance and/or market the properties for sale. The Notices to Comply were void because the HCO and Sprinkler Ordinance do not apply to residential hotels withdrawn from residential rental use if they are not converted to condominiums, other subdivided interests, or nonresidential use, and Reidy was not planning such a conversion. The City had rejected all his requests to remove or expunge the recorded Notices to Comply. He therefore prayed for a writ of mandate ordering the City to expunge the Notices to Comply and not to enforce the HCO and Sprinkler Ordinance against him or the properties.

In support of his petition, Reidy declared: He decided to withdraw the three properties from residential rental use because they brought very little income to the Trust as hotels and were subject to greatly increasing monetary obligations. He intended to market each property as a single-family residence. The cost of bringing the properties into compliance with the Sprinkler Ordinance would be $200,000, and the Trust lacked the money to comply. Also, the artwork built into the ceilings of the properties would be destroyed during the sprinkler retrofit process.

The City opposed the petition on the grounds, inter alia, Reidy failed to exhaust his administrative remedies, and the Ellis Act did not preempt the HCO.

In support of the City's opposition, Chief Housing Inspector Rosemary Bosque declared: the Trust had not applied to the Department of Building Inspection for a conversion permit under the HCO. On February 5, 2003, she read an article in the San Francisco Chronicle reporting that the three

properties had been withdrawn from rental use under the Ellis Act and the owner intended to sell them for conversion to a consulate or private house. The article also indicated that the owner and the owner's attorney did not believe the properties were subject to the HCO or Sprinkler Ordinance because of the Ellis Act filing. After she read the article, she recorded the February 13, 2003 Notice to Comply to ensure that prospective buyers would be aware that, under Ellis Act amendments effective January 1, 2000, the properties were still subject to the HCO and Sprinkler Ordinance. She recorded the notice for informational purposes only; the notice did not seek to enforce the HCO or Sprinkler Ordinance. She was unaware of the Department of Building Inspection recording a similar notice to comply because, since the 2000 amendments, only one other residential hotel owner had invoked the Ellis Act and simultaneously contended the HCO and Sprinkler Ordinance were preempted. This other residential hotel owner had applied for a conversion permit under the HCO. When she had informed this other owner that the Department of Building Inspection intended to deny his conversion permit because it did not provide for replacement housing as required by the HCO, he told her he planned to appeal the department's decision to the Board of Permit Appeals. Had this other hotel owner not applied for a conversion permit, she would have recorded a notice to comply against his property, as she did with the Trust's three properties.

The trial court concluded there was no evidence that the Trust intended to change the three properties to nonresidential use; the Ellis Act amendments affected only the City's power to regulate conversions of residential property to nonresidential property; the City could not enforce the one-for-one replacement housing provisions of the HCO as to properties that were withdrawn from residential rental use pursuant to the Ellis Act unless there was a change of use from residential to nonresidential; and the Sprinkler Ordinance was inapplicable to the properties because they are no longer being used as residential hotels. It therefore granted the Trust's petition and ordered the City to expunge all notices recorded against the properties that referred to the HCO or the Sprinkler Ordinance.

## DISCUSSION

### I.  Standard of Review

■   When a trial court makes factual findings in a petition for writ of mandate, the reviewing court reviews the record to determine if the findings are supported by substantial evidence. (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311].) We review questions of statutory construction de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) This appeal raises no issue involving disputed facts.

II.  *Impact of Unlawful Detainer Proceedings*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.  *Ellis Act Preemption of the HCO*

The City contends the Ellis Act does not preempt a local ordinance like the HCO that regulates the conversion and demolition of residential rental units withdrawn from the rental market.

A.  *Preemption Doctrine*

A city or county may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations that do not conflict with general law. (Cal. Const., art. XI, § 7.) If local legislation conflicts with state law, it is preempted by the state law and is void. (*Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) A conflict exists when the local legislation contradicts state law. Local legislation contradicts state law when it is inimical to it. (*People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 484 [204 Cal.Rptr. 897, 683 P.2d 1150]; *Candid Enterprises, Inc., supra,* 39 Cal.3d 885.)

B.  *The Ellis Act*

The Ellis Act was enacted in 1985, provoked by *Nash v. City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894] (*Nash*). (Stats. 1985, ch. 1509, § 1, pp. 5560–5565.)

In *Nash*, a property owner challenged the constitutionality of a city ordinance that required the owner of residential rental property who wanted to remove the property from the rental market by demolition or conversion to obtain a permit before so removing it. The city would issue the mandatory permit only where (1) the property was unoccupied by or unaffordable to a low- or moderate-income person, (2) the property's removal from the rental market would not adversely affect the housing supply, and (3) the owner could not make a reasonable return on investment. (*Nash, supra,* 37 Cal.3d at pp. 100–101.) *Nash* upheld the ordinance, holding that a residential rental property owner does not have a constitutional right, free from government interference, to go out of the rental business. (*Id.* at pp. 103–104.)

---

[*]See footnote, *ante,* page 580.

■ The legislative response was passage of the Ellis Act, which prohibits a city or county from enacting legislation that compels the owner of residential real property to offer or continue to offer accommodations in the property for rent or lease.[2] (Gov. Code, § 7060.[3]) Its expressly stated purpose is to supersede *Nash*, to the extent *Nash* conflicts with act, in order to permit a residential rental landlord "to go out of business." (§ 7060.7.) As originally enacted, the Ellis Act also stated that it was "not otherwise intended to . . . [¶] (1) Interfere with local governmental authority over land use, including regulation of the conversion of existing housing to condominiums or other subdivided interests." (Former § 7060.7.)

■ Following the 1985 enactment of the Ellis Act, appellate courts uniformly concluded that the act bars local ordinances that condition a residential landlord's right to go out of business on compliance with require-ments that are not found in the Ellis Act. The courts also uniformly concluded that a city retains its traditional police power to regulate the subsequent use of the property after the property's removal from the rental market. Thus, for example, if an ordinance requires a residential landlord to obtain a removal permit before removing a rent-controlled rental unit from the rental housing market by demolition or conversion, and further requires that the landlord must satisfy specified criteria before the removal permit will issue, the ordinance infringes on the landlord's decision to go out of the rental housing business and conflicts with the Ellis Act. However, the city retains the authority to regulate the particulars of the demolition and the redevelopment of the property after it is withdrawn from the rental market. (*Javidzad v. City of Santa Monica* (1988) 204 Cal.App.3d 524, 529–531 [251 Cal.Rptr. 350]; see also *First Presbyterian Church v. City of Berkeley* (1997) 59 Cal.App.4th 1241, 1252–1253 [69 Cal.Rptr.2d 710]; *Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles* (1997) 54 Cal.App.4th 53, 64 [62 Cal.Rptr.2d 600]; *Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1102 [271 Cal.Rptr. 44] (*Bullock*); *City of Santa Monica v. Yarmark* (1988) 203 Cal.App.3d 153, 162–164 [249 Cal.Rptr. 732].)

## C. *The HCO*

The City adopted the HCO to benefit the general public by minimizing the adverse impact of the loss of residential hotel units through conversion and demolition on the City's housing supply and on displaced low-income,

---

[2] As of January 1, 2004, the Ellis Act has been amended so that it does not apply to residential hotels like the three Trust properties, but it "grandfathers" these properties against application of the amendment. (See pp. 591, 592, *post.*) Unless otherwise noted, all references to the Ellis Act are to the version of the act in effect at the time of Reidy's October 8, 2002 Ellis Act filing.

[3] All further section references are to the Government Code.

elderly, and disabled persons. (*Bullock, supra*, 221 Cal.App.3d at p. 1080.) To accomplish this purpose, the HCO establishes the status of residential hotel units, regulates their demolition and conversion to other uses, and provides appropriate administrative and judicial remedies. (HCO, § 41.2.)

The HCO makes it unlawful to change the use of, eliminate, or demolish a residential hotel unit without first obtaining a permit to convert in accordance with the HCO's provisions. (HCO, § 41.20, subd. (a)(1).) The HCO defines "conversion" as, inter alia, "the elimination of a residential unit or the voluntary demolition of a residential hotel." (HCO, § 41.4, subd. (c).) Application for a permit to convert is made to the Department of Building Inspection. (HCO, § 41.12, subd. (c).)

Before a permit to convert will issue, the hotel owner is required to provide one-for-one replacement of the units to be converted by either (1) constructing or bringing onto the market new residential units comparable to those converted; (2) constructing or rehabilitating certain types of housing for low-income, disabled, or elderly people; or (3) paying an in-lieu fee equal to 80 percent of the replacement construction costs and site acquisition to the City or a nonprofit housing developer. (HCO, §§ 41.13, subd. (a), 41.14, 41.15.) The Department of Building Inspection is mandated to deny the permit to convert if the applicant has not complied with all housing replacement requirements. (HCO, § 41.14.)

### D. *Bullock v. City and County of San Francisco*

In *Bullock*, the owner of a mixed residential/tourist hotel invoked the Ellis Act. He stated that he intended to operate the hotel solely for transients. (*Bullock, supra*, 221 Cal.App.3d at pp. 1084, 1100.) The City obtained a preliminary injunction against his doing so, asserting he first had to comply with the HCO's requirement to obtain a permit to convert the property to another use.[4] (*Bullock, supra*, at pp. 1081, 1085, 1100.) The owner argued that the Ellis Act granted him the absolute right to go out of the residential hotel business and into the tourist hotel business. (*Id.* at p. 1100.)

*Bullock* concluded that the "Ellis Act [did] not permit the City to condition [the hotel owner's] departure [from the residential rental business] upon the

---

[4] During the trial court proceedings in *Bullock*, the permit to convert requirements, including the one-for-one replacement prerequisite for a permit to issue, were in section 41.10 of the HCO. (*Bullock, supra*, 221 Cal.App.3d at pp 1080, 1081.) The same requirements, without significant change in language, are now in the HCO, sections 41.12, 41.13, and 41.20, subdivision (a)(1).

payment of ransom." (*Bullock, supra*, 221 Cal.App.3d at p. 1101.) As *Bullock* elaborated, the effect of the HCO's conversion permit requirements was to compel the hotel owner to remain in the rental business because the HCO allowed " 'no means to permit [him] to simply go out of business.' [Citation.]" (*Ibid.*) Rather than recognize the hotel owner's right under the Ellis act simply to go out of business, the City, via the HCO's conversion permit requirements, was attempting to impose a prohibitive price on the hotel owner's exercise of that right under the act. (*Ibid.*)

*Bullock* also rejected the City's argument that the HCO's conversion permit requirements fell within the Ellis Act provision that allows a public entity to require the property owner to mitigate any adverse impact on persons displaced by the withdrawal of property from the rental market. (§ 7060.1, subd. (c).) "It is one thing to require the owner of a residential hotel to provide mitigation to tenants actually displaced by a conversion [the hotel owner had not objected to the HCO requirement that he pay displaced tenants' moving expenses and a $1,000 displacement allowance], but it is something entirely different to require the owner to make expenditures that benefit society at large. . . . [¶] What [the hotel owner] proposes to do with his property once he has gone out of the business of offering residential rental units has no bearing at this time in determining [his] right to decide to go out of that business and to invoke the protection extended him for this purpose by the Ellis Act. [Citations.] The City retains an amplitude of powers, which are expressly recognized in the Ellis Act (see Gov. Code, §§ 7060.1, 7060.7), that may be relevant insofar as the City may see fit 'to regulate the *subsequent* use of the property following its removal from the rental market.' [Citation.] [¶] We conclude that [the HCO'S conversion permit requirement] is preempted by the Ellis Act and is therefore invalid to the extent it is applied to prevent [the hotel owner] from going out of the residential hotel business. [Citations.] Accordingly, [the hotel owner's] alleged noncompliance with [the conversion permit requirement] could not serve as the basis for the preliminary injunction." (*Bullock, supra*, 221 Cal.App.3d at pp. 1101, 1102.)

## E. *Ellis Act Amendments*

Effective January 1, 2000, section 7060.7 was amended to relabel subdivision (1) as subdivision (a) and add new language thereto, and to add subdivision (b). (Stats. 1999, ch. 968, § 4.) The purpose of the Ellis Act remains to supersede *Nash* so that landlords may be permitted to go out of business, but section 7060.7 now states that the act is "not otherwise intended to . . . [¶] (a) Interfere with local governmental authority over land

use, including regulation of the conversion of existing housing to condominiums or other subdivided interests or to other nonresidential use following its withdrawal from rent or lease under [the act]. [¶] (b) Preempt local or municipal environmental or land use regulations, procedures, or controls that govern the demolition and redevelopment of residential property." (Amending language underlined.)

## F.  *Analysis*

The City argues the 2000 amendments to the Ellis Act supersede the *Bullock* holding "that an Ellis filing preempts the HCO,"[5] and as a result, the Ellis Act now "exempts from its preemptive effect local regulations [like the HCO] that control the conversion of residential units to nonresidential use or the demolition of residential units." As we understand the City's argument, the Ellis Act no longer preempts any part of the HCO because the act now specifies (1) a city retains authority to regulate the conversion of residential rental property to nonresidential use after the rental property is withdrawn from the rental market, and (2) the act does not preempt local regulations governing the demolition and redevelopment of residential property. Therefore, the City concludes, the HCO, which governs the demolition of residential hotel units, does not conflict with the Ellis Act. The City seems to argue that it can impose HCO compliance after the property owner withdraws the property from residental rental use but before he or she proposes or seeks approval of any new use for the property. We disagree.

■      The primary rule of statutory construction is to ascertain the legislative intent in order to effectuate the statute's purpose. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) When the words of the statute are clear, the court does not alter or amend them to accomplish a purpose that does not appear on the face of the statute; rather, the court gives effect to the plain meaning of the statute. (*Ibid.*; *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

(6)    Furthermore, courts do not presume the Legislature intended to overthrow long-established principles of law unless it makes its intention to do so clear, either by express declaration or necessary implication. (*Juran v. Epstein* (1994) 23 Cal.App.4th 882, 896 [28 Cal.Rptr.2d 588].) By the same

---

[5] Actually, *Bullock* did not hold that the Ellis Act preempted the entire HCO, only the HCO provisions that require a permit to convert and one-for-one replacement housing.

token, we do presume the Legislature is aware of exiting law when it amends a statute. Therefore, when the Legislature does not change a statute in a particular respect but does change it in other respects, we infer an intent to leave the statute as it stands in the aspects of the statute that were not amended. (*Estate of McDill* (1975) 14 Cal.3d 831, 837–838 [122 Cal.Rptr. 754, 537 P.2d 874].)

Nothing in the 2000 amendments altered the expressly stated, fundamental purpose of the Ellis Act: to allow owners of residential rental property to go out of the rental business without restriction by the local government. Nor do the amendments manifest an intent to upend 14 years of uniform judicial construction, holding that a local government cannot condition an owner's right to go out of business on compliance with requirements that do not appear in the act. Unlike the Ellis Act language that specifically refers to the act's purpose of superseding *Nash*, the amendments conspicuously omit any reference to the *Bullock* holding that a local ordinance requiring a conversion permit conditioned on providing replacement housing is preempted by the Ellis Act. Rather, the amendment specifically refers to local regulations that govern "demolition and redevelopment." (§ 7060.7, subd. (b).) This specific reference clarifies the act by incorporating that same 14-year body of judicial construction that uniformly holds the act does not restrict local governments from exercising their police powers to regulate the use of the landlord's property as to such matters as zoning, demolition, and development after it is taken off the rental market, so long as those regulations do not "otherwise" prevent a residential landlord from going out of the rental business. (§ 7060.7.)

The most recent amendment to the Ellis Act further demonstrates that the Legislature did not intend the 2000 amendments to permit cities to promulgate land use regulations applicable to property subsequent to an Ellis Act filing, if those regulations effectively compel residential rental use and prevent the property owner from quitting the rental business. Effective January 1, 2004, the Ellis Act states that a public entity cannot compel a residential property owner to continue to offer the property for rent "except for guestrooms or efficiency units within a residential hotel" that meets three conditions: (1) "[t]he residential hotel is located in a city and county, or in a city with a population of over 1,000,000," i.e., San Francisco, Los Angeles, or San Diego; (2) it has a permit of occupancy issued before January 1, 1990; and (3) it has not sent out a notice of intent to withdraw from the rental business before January 1, 2004. (§ 7060, subd. (a)(1)–(3); Stats. 2003, ch. 766, § 1.) An amendment that makes a material change to a statute bespeaks a legislative intent to change the meaning of the statute. (*Smith v. Board of Supervisors* (1989) 216 Cal.App.3d 862, 872 [265 Cal.Rptr. 466].) By expressly excepting certain residential hotels from the statutory right under the Ellis Act to go out of the rental business, the

Legislature plainly manifested that, prior to the 2004 amendment, it intended the right to apply to *all* residential rental property, and that local ordinances could not impair that right by compliance requirements not contained in the Ellis Act.

In fact, according to its legislative history, the 2004 amendment was prompted by Reidy's Ellis Act filing. A state assembly member from San Francisco introduced the initial bill, and the bill analysis states that the bill "derives from a situation that has arisen in San Francisco" concerning the "72 year old Marine View mansion," i.e., the 2820/2824 Scott Street property, "located in the posh Pacific Heights neighborhood [which] has operated as a boarding house for more than 50 years." Had the Legislature, prior to January 1, 2004, intended that ordinances like the HCO were not preempted by the Ellis Act, the amendment would have been unnecessary.

Because section 41.20, subdivision (a)(1) of the HCO makes it unlawful for a residential hotel owner to change the use of, or eliminate a residential hotel unit without first obtaining a permit to convert, and sections 41.13 and 41.14 do not allow the issuance of a conversion permit until the owner provides replacement housing, these sections effectively conditioned the right of a City and County of San Francisco hotel owner to go out of the rental business before January 1, 2004, on compliance with requirements that were not found in the pre-2004 Ellis Act. Unless and until Reidy proposes a change in use for these properties that is inconsistent with the current zoning of their neighborhoods, the HCO has no application.

IV. *Sprinkler Ordinance*

■ The Sprinkler Ordinance amended the San Francisco Fire Code, section 9001.1.3, and the San Francisco Housing Code, section 904, effective June 30, 2002, to require that an automatic sprinkler system be installed throughout the residential occupancy of every residential hotel building existing on October 16, 2001, and containing 20 or more guest rooms. The City contends the properties at issue remain subject to the Sprinkler Ordinance, even if no longer used as residential hotels, until Reidy obtains a conversion permit under the HCO. As we have discussed, *ante*, the HCO requirement of a permit to convert is preempted by Reidy's Ellis Act filing. The purpose of an automatic sprinkler system in a building that operates as a residential hotel is undisputedly justified, but Reidy, by the Ellis Act filing, has withdrawn the properties from residential hotel operation and is therefore not obligated to comply with the HCO's conversion permit requirement. Because the properties are not now being used as residential hotels, the Sprinkler Ordinance is inapplicable to them.

## V. *Exhaustion of Administrative Remedies*

The City contends the judgment must be reversed because Reidy failed to exhaust his administrative remedies. It argues Reidy was first obligated to apply to the Director of Building Inspection for a conversion permit, in which he would submit his contention that the HCO was preempted by the Ellis Act, and, if the director denied his permit, appeal the denial to the City's Board of Permit Appeals.

■ The purpose of Reidy's petition for writ of mandate was to compel the City to expunge the recorded Notices to Comply, which, he contended, were invalid because the three Trust properties were not subject to the HCO's requirement of a permit to convert and the permit's prerequisite of one-for-one housing replacement. The City has not identified any authority granted to the Director of Building Inspection, who recorded the subject notices, or granted to the Board of Permit Appeals to determine whether a local ordinance is preempted by a state statute. In any case, a party is not required to exhaust administrative remedies when doing so would be futile. (*Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1568 [55 Cal.Rptr.2d 465].) Section 41.14 of the HCO, entitled "Mandatory Denial of Permit to Convert," states that the Department of Building Inspection "shall" deny a permit to convert if the applicant has not complied fully with the requirement to provide one-for-one replacement housing. Given this language, the relevant City administrative agencies have no discretion even to waive the replacement housing requirement for a permit to convert to issue, let alone determine whether these sections of the HCO are preempted by the Ellis Act.

Under the circumstances, Reidy was not obligated to pursue administrative relief before seeking a writ ordering the City to expunge the recorded Notices to Comply.

## CONCLUSION

Insofar as sections 41.13, 41.14, and 41.20, subdivision (a)(1) of the HCO were preempted by the Ellis Act before January 1, 2004, the trial court did not err in ordering the City to expunge the Notices to Comply recorded against the three Trust properties. Because the three Trust properties have been withdrawn from the rental market, the court did not err in ordering the City to expunge any reference to the Sprinkler Ordinance in the Notices to Comply.

## DISPOSITION

The judgment is affirmed.

Stevens, J., and Gemello, J., concurred.

A petition for a rehearing was denied November 23, 2004, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied January 19, 2005.