Opinion
RIVERA, J.
The City and County of San Francisco (the City) appeals after the trial court granted the petition for writ of mandate of Jackie Fieri, Lavinia Turner, and Small Property Owners of San Francisco (collectively Fieri), concluding the City’s relocation assistance ordinance on its face violated the Ellis Act (Gov. Code,[1] § 7060 et seq.). We reverse.
I. BACKGROUND
Jackie Fieri and Lavinia Turner own residential rental properties in San Francisco which they seek to remove from the rental market. Small Property Owners of San Francisco is an organization seeking to promote home ownership in San Francisco. They filed a petition for writ of mandate on March 2, 2005, alleging the City’s relocation assistance ordinance (ordinance No. 21-05), which required landlords to provide relocation assistance to their tenants when removing property from the rental market (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)), facially violated the Ellis Act. The petition alleged the relocation ordinance was not reasonably related to the tenants’ need for assistance, and therefore impermissibly placed a prohibitive price on the right to withdraw property from the rental market. The trial court granted the petition, ruling that the relocation ordinance facially violated the Ellis Act.
II. DISCUSSION
The Ellis Act was passed in response to a 1984 ruling of the California Supreme Court, Nash v. City of Santa Monica (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894], which permitted a city to restrict the circumstances in which owners of residential properties could evict tenants in order to withdraw from the rental market. (See Channing Properties v. City of Berkeley (1992) 11 Cal.App.4th 88, 91 [14 Cal.Rptr.2d 32] (Channing Properties); § 7060.7.) It provides that no public entity may “compel the *889 owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease, except for [certain] guestrooms or efficiency units within a residential hotel . . . .” (§ 7060, subd. (a).)
The City’s relocation ordinance requires owners of residential rental properties who seek to withdraw from the rental market to provide monetary relocation assistance to their tenants. As pertinent here, it requires that landlords who wish to withdraw all the rental units in a building from rent or lease provide each tenant $4,500, with a maximum payment of $13,500 per unit. (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3).) The City contends this requirement is proper under the Ellis Act, which provides: “Notwithstanding Section 7060, nothing in this chapter does any of the following: [f] ... [10 (c) Diminishes or enhances any power in any public entity to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations.” (§ 7060.1.)[2]
The trial court concluded the language of section 7060.1, subdivision (c) allows public entities to require mitigation only for low income residents, and that an ordinance requiring relocation assistance regardless of income offended the purposes of the Ellis Act by “preventing] all but the wealthiest landlords from going out of the rental business.” To the extent the relocation ordinance conflicts with state law, it is preempted by the state law and is void. (See Reidy v. City and County of San Francisco (2004) 123 Cal.App.4th 580, 587 [19 Cal.Rptr.3d 894] (Reidy); Cal. Const., art. XI, § 7.) We review the trial court’s interpretation of the Ellis Act de novo. (See Reidy, at p. 586.)
The trial court’s conclusion that the Ellis Act allows relocation assistance only for low income tenants was derived not from the current statutory language but from Channing Properties, a case interpreting an earlier version of section 7060.1, subdivision (c). At the time Channing Properties was decided, section 7060.1, subdivision (c) provided as follows: “Notwithstanding Section 7060, nothing in this chapter does any of the following: [][]... [f] (c)(1) Diminishes or enhances any power which currently exists or which may hereafter exist in any public entity to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations in any residential hotel, as defined by *890 Section 50519 of the Health and Safety Code, which is expressly reserved, or generally used, for occupancy by lower income households, as defined by Section 50079.5 of the Health and Safety Code, [f] (2) The reference to residential hotels in paragraph (1) is not intended by the Legislature to diminish or enhance any power which currently exits or which may hereafter exist in any public entity to require those same actions for other types of accommodations.” (Stats. 1985, ch. 1509, § 1, pp. 5560-5561.)
The plaintiff in Channing Properties challenged a Berkeley law requiring that landlords wishing to remove residential property from the rental market provide six months’ notice and pay $4,500 per unit for relocation expenses. (Channing Properties, supra, 11 Cal.App.4th at pp. 91-92.) The question facing the court was whether then section 7060.1, subdivision (c)(2) authorized public entities to require relocation assistance for all displaced tenants, or whether it allowed such assistance only for lower income tenants in accommodations other than residential hotels. {Channing Properties, at pp. 98-99.) Division Two of the First Appellate District noted that former section 7060.1, subdivision (c)(1) was a “carefully worded statute affording protection to a specifically defined group, low income tenants in residential hotels.” {Channing Properties, at p. 99.) If then subdivision (c)(2) were interpreted to allow cities to require relocation assistance for all displaced tenants, regardless of income, former subdivision (c)(1) would be meaningless because there would be no need to specify that such assistance could be required for low income tenants of residential hotels. An interpretation restricting the assistance authorized by then subdivision (c)(2) to low income tenants “retain[ed] subdivision (c)(l)’s focus on lower income tenants but clarifie[d] that the specific reference to residential hotels in subdivision (c)(1) [did] not preclude cities from acting to mitigate the effects of removal of rental housing on lower income tenants in other types of housing.” {Channing Properties, at p. 99.) Furthermore, according to the court, such a construction would effectuate the Ellis Act’s purpose of “ ‘alleviating] the plight of landlords’ ” because to allow relocation assistance for all tenants as a condition of removing rental housing units from the market would “place a potentially insurmountable obstacle in the path of landlords wishing to leave the business.” (Id. at pp. 99-100.) “In the absence of any indication in the statutory language that the Legislature intended to extend protection to tenants other than the lower income tenants identified in section 7060.1, subdivision (c)(1),” the court construed then subdivision (c)(2) to apply only to lower income households. {Channing Properties, at pp. 100-101.)
The Legislature amended the Ellis Act in 2003. Section 7060 was amended to exempt certain guestrooms and efficiency units in residential hotels from the *891 reach of the Ellis Act. (§ 7060, subd. (a).)[3] At the same time, section 7060.1, subdivision (c) was amended to eliminate the references to residential hotels used for occupancy by lower income households and other types of accommodations (Stats. 1985, ch. 1509, § 1, pp. 5560-5561), and instead to provide simply that the Ellis Act does not diminish or enhance any public entity’s power “to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations.”
Fieri argues, and the trial court agreed, that Channing Properties’s limitation on relocation assistance to lower income tenants survived the elimination of the statutory language upon which it was based. We see no basis for such a conclusion. As the court noted in Channing Properties, the intent shown in the wording of former section 7060.1, subdivision (c) was to protect lower income tenants. (Channing Properties, supra, 11 Cal.App.4th at p. 99.) No such limitation on the legislative intent appears in the current statutory language. The Legislature has shown that it can draft language intended to protect only lower income tenants. In eliminating such language, and in including “persons displaced by reason of the withdrawal from rent or lease of any accommodations” (§ 7060.1, subd. (c), italics added), we can only conclude the Legislature meant what it said.
We are not persuaded otherwise by Fieri’s argument that the Legislature did not express an intent to overturn the rule of Channing Properties. It is true that “it should not be presumed that the legislative body intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.” (People v. Davenport (1985) 41 Cal.3d 247, 266 [221 Cal.Rptr. 794, 710 P.2d 861].) However, even if the court’s construction in Channing Properties of former section 7060.1, subdivision (c) qualified as a “long-established principien of law,” we would disagree with Fieri’s conclusion. We must presume the Legislature was aware of prior judicial interpretations of the law *892 and that in amending the statute, it “intended to change all the particulars upon which we find a material change in the language of the act.” (Moore v. State Bd. of Control (2003) 112 Cal.App.4th 371, 383 [5 Cal.Rptr.3d 116] (Moore), citing Clements v. T. R. Bechtel Co. (1954) 43 Cal.2d 227, 232 [273 P.2d 5].) The amendment to section 7060.1, subdivision (c) was clear and unambiguous, and eliminated the precise language relied on in Channing Properties. As aptly stated in People v. Olmsted (2000) 84 Cal.App.4th 270, 276 [100 Cal.Rptr.2d 755]: “In interpreting statutory language, a court must not ‘insert what has been omitted, or . . . omit what has been inserted.’ (Code Civ. Proc., § 1858.) This is particularly true where, as here, the term in question previously appeared in the statute but was subsequently omitted. We decline to insert a word the Legislature has removed.” (See also Estate of McDill (1975) 14 Cal.3d 831, 838 [122 Cal.Rptr. 754, 537 P.2d 874] [it is not the court’s province to insert language into statute].) We likewise decline to insert language the Legislature has omitted, and reject the argument that section 7060.1, subdivision (c), as amended in 2003, limits relocation assistance to low income tenants.
Fieri contends, however, that the City’s relocation ordinance violates the Ellis Act by placing a prohibitive price on a landlord’s decision to go out of business. We cannot conclude—and Fieri does not argue—that the imposition of relocation assistance payments must inevitably place an undue burden on a landlord’s right to withdraw from the rental business. In stating that it neither diminishes nor enhances the power of public entities to mitigate adverse impacts on displaced tenants, section 7060.1, subdivision (c) clearly contemplates that public entities have some such power under existing law.
The decisional law in existence when the Ellis Act was passed and amended indicated that mitigation for displaced tenants could come in the form of monetary payments. Before the enactment of the Ellis Act, several courts upheld local laws requiring landlords to make monetary payments to tenants displaced by condominium conversions. In Kalaydjian v. City of Los Angeles (1983) 149 Cal.App.3d 690, 692 [197 Cal.Rptr. 149], for instance, the court considered a Los Angeles city ordinance requiring landlords who converted apartments to condominium use to provide relocation assistance to displaced tenants in the amount of $2,500 to tenants who were older, disabled, or had children, and $1,000 to other tenants. The Court of Appeal concluded the requirements were within the city’s police power, and that developers who benefited from the changed use could be required to alleviate the displacement and other adverse effects of the zoning conversion. The fees would assist tenants who lost their rent-controlled apartments and would have to seek housing with higher market rents, and the amounts were not unreasonable. *893 (Id. at pp. 693-694; accord, Briarwood Properties, Ltd. v. City of Los Angeles (1985) 171 Cal.App.3d 1020, 1032 [217 Cal.Rptr. 849].) The court in People v. H & H Properties (1984) 154 Cal.App.3d 894, 897-898 and footnote 1, 901 [201 Cal.Rptr. 687], reached a similar conclusion, finding reasonable a Los Angeles County requirement that landlords converting housing to condominium use pay displaced tenants $500 in moving costs and relocation assistance of $1,000 or monthly rent multiplied by the number of years the tenant had occupied the unit.[4] Furthermore, after the enactment of the Ellis Act—and, as noted above, before the Legislature amended section 7060.1, subdivision (c)—the Channing Properties court concluded that monetary compensation could be required for displaced lower income tenants. (Channing Properties, supra, 11 Cal.App.4th at pp. 100-101.) We presume the Legislature was aware of the decisional law that existed at the time it enacted and amended the Ellis Act. (See Moore, supra, 112 Cal.App.4th at p. 383.) Thus, we conclude that a requirement of reasonable relocation assistance compensation for displaced tenants does not violate the Ellis Act.[5]
The question of whether the payments required by the relocation assistance ordinance are reasonable remains to be decided. Several cases have established that a public entity may not impose a prohibitive price on a landlord’s exercise of the right under the Ellis Act to go out of business. The court in Javidzad v. City of Santa Monica (1988) 204 Cal.App.3d 524, 526 [251 Cal.Rptr. 350], considered a city law that denied a removal permit to landlords *894 who could make a fair return on their property unless the units were uninhabitable or unless the landlord intended to develop new rent controlled units. Noting that the denial of a removal permit precluded the redevelopment of the property, the court concluded the measure imposed a prohibitive price on the exercise of the rights under the Ellis Act. (Id. at p. 531.) Other cases have concluded local measures violated the Ellis Act where they denied a permit for demolition of a residential building unless it would not be detrimental to housing needs and it would either remove a hazardous structure or would be necessary to permit construction of the same number of housing units (First Presbyterian Church v. City of Berkeley (1997) 59 Cal.App.4th 1241, 1252-1253 [69 Cal.Rptr.2d 710]); denied the right to demolish buildings unless the owners agreed to restrict the use of the land for themselves and their successors for 10 years (Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles (1997) 54 Cal.App.4th 53, 64 [62 Cal.Rptr.2d 600]); and denied the right to eliminate or demolish residential hotel units unless the owner either provided replacement units or paid the city 80 percent of the cost of replacement housing (Reidy, supra, 123 Cal.App.4th at pp. 589, 593). Thus, in each of these cases, the local law on its face imposed a significant restriction on the landlord’s use of the property.
Fieri contends the City’s relocation ordinance on its face puts a prohibitive price on the decision to go out of the residential rental business. In considering a facial challenge, we consider “only the text of the measure itself, not its application to the particular circumstances of an individual.” (Tobe v. City of Santa Ana (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) Thus, we can only invalidate the relocation ordinance if it presents a “ 1 “total and fatal conflict” ’ ” with state law. (Ibid., quoting Arcadia Unified School Dist. v. State Dept. of Education (1992) 2 Cal.4th 251, 267 [5 Cal.Rptr.2d 545, 825 P.2d 438].) We cannot conclude that the relocation ordinance on its face violates the Ellis Act. While the amount of the compensation is higher than that approved in Kalaydjian, Briarwood Properties, and H & H Properties, it is not so disproportionately higher—especially in light of intervening inflation—that it is necessarily beyond that contemplated by the Legislature in enacting and amending section 7060.1, subdivision (c). In the circumstances, we must reject Fieri’s facial challenge to the relocation ordinance.[6] In doing so, we express no view on the merits of any challenge that might be brought to the application of the ordinance in any particular situation.
*895 m. DISPOSITION
The judgment is reversed.
Sepulveda, Acting P. J., and Munter, J.,* concurred.
A petition for a rehearing was denied March 16, 2006, and respondents’ petition for review by the Supreme Court was denied June 21, 2006, S142897.

 All undesignated statutory references are to the Government Code.

 “Accommodations” are defined as either “[t]he residential rental units in any detached physical structure containing four or more residential rental units,” or “[w]ith respect to a detached physical structure containing three or fewer residential rental units, the residential rental units in that structure and in any other structure located on the same parcel of land, including any detached physical structure specified in subparagraph (A).” (§ 7060, subd. (b)(1).)

 Before being amended, section 7060, subdivision (a) had provided: “No public entity, as defined in Section 811.2, shall, by statute, ordinance, or regulation, or by administrative action implementing any statute, ordinance or regulation, compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease.” (Stats. 1985, ch. 1509, § 1, p. 5560.) The 2003 amendment added the following language: “except for guestrooms or efficiency units within a residential hotel, as defined in Section 50519 of the Health and Safety Code, if the residential hotel meets all of the following conditions: [1] (1) The residential hotel is located in a city and county, or in a city with a population of over 1,000,000. [f] (2) The résidential hotel has a permit of occupancy issued prior to January 1, 1990. [f] (3) The residential hotel did not send a notice of intent to withdraw the accommodations from rent or lease pursuant to subdivision (a) of Section 7060.4 that was delivered to the public entity prior to January 1, 2004.” (Stats. 2003, ch. 766, § 1.)

 The court in Channing Properties distinguished Briarwood Properties, Kalaydjian, and H & H Properties on the ground that they predated the Ellis Act and, accordingly, were not authority for the proposition that relocation assistance requirements not limited by income level were allowed under the Ellis Act. (Channing Properties, supra, 11 Cal.App.4th at p. 100, fn. 6.) We have no quarrel with this conclusion. As discussed above, however, after Channing Properties was decided, the Legislature amended the Ellis Act to eliminate the language on which the court relied to conclude that relocation assistance must be limited by income level. We interpret current section 7060.1, subdivision (c)’s provision that the Ellis Act was not intended to diminish or enhance public entities’ power to mitigate adverse impacts on tenants displaced from any accommodation to mean that local governments may take such actions as would be allowed under their police power in the absence of the Ellis Act. In reaching this conclusion, however, we do not imply that public entities may impose a prohibitive price on a landlord’s exercise of the right to withdraw from the rental market. (See, post.)

 In Bullock v. City and County of San Francisco (1990) 221 Cal.App.3d 1072, 1099-1102 [271 Cal.Rptr. 44], Division Four of the First Appellate District concluded a city ordinance that conditioned issuance of a permit to convert residential hotel units to tourist use on the owner’s either providing replacement units or making a substantial “in lieu” payment to a fund maintained by the City, from which tenants could apparently receive relocation assistance, violated the Ellis Act. The court rejected the argument that the ordinance merely mitigated the adverse impact on displaced tenants, stating: “It is one thing to require the owner of a residential hotel to provide mitigation to tenants actually displaced by a conversion [citing section 7060.1], but it is something entirely different to require the owner to make expenditures that benefit society at large.” (Bullock, at p. 1101.) The payments in question here would directly benefit tenants, not society at large.

 In any event, the present record does not show that the relocation ordinance has made it prohibitively expensive for anyone to leave the rental market. While the pleadings in the record refer to declarations in which Fieri and Timer apparently state it would be a hardship to pay the relocation compensation, there is no evidence that they will, in fact, be unable to withdraw from the rental market.

Judge of the Superior Court of San Francisco County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.