Filed 2/27/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>ARMONDO LOPEZ,<br><br>   Defendant and Appellant. | F086179<br><br>(Super. Ct. No. VCF037021B-96)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## **INTRODUCTION**

In 1995, appellant Armondo Lopez assisted his codefendant in ambushing and shooting at a person. During the attack, an unintended victim was shot and killed. In 1996, a jury convicted appellant of first degree murder (Pen. Code, § 187, subd. (a);[1] count 1) for the death of the unintended victim. For the shots fired at the intended victim, the jury convicted appellant of premeditated attempted murder (§§ 664/187, subd. (a); count 2). In both counts, the jury found true that a principal was armed with a firearm (§ 12022, subd. (a)(1)). For the murder, appellant was sentenced to prison for 25 years to life, with a consecutive one year for the firearm enhancement. For the attempted murder, appellant received a consecutive sentence of life with the possibility of parole.

In 1998, we filed an unpublished opinion in which we affirmed appellant's judgment.[2] (*People v. Lopez* (Oct. 27, 1998, F026937).)

In 2021, appellant filed a petition for resentencing, contending he could no longer be convicted of murder based on changes in the law. In 2023, the court conducted an evidentiary hearing, and it concluded that appellant was ineligible for relief.

In denying the petition, the trial court impliedly found that appellant was guilty of murder through the doctrine of transferred intent. Appellant argues that, after the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), the doctrine of transferred intent cannot establish his liability for murder. He contends that his murder conviction is legally invalid.

This is an issue of first impression. We hold that Senate Bill 1437 did not abrogate the doctrine of transferred intent. We reject appellant's arguments that his murder conviction is legally invalid and we affirm.

---

[1]     All future statutory references are to the Penal Code unless otherwise noted.

[2]     On the court's own motion, we take judicial notice of the records in case No. F026937, including the prior opinion filed in 1998. (Evid. Code, § 452, subd. (d).)

## BACKGROUND

### I.     The Relevant Trial Evidence.

We summarize the material trial facts taken from the 1998 opinion. (*People v. Lopez*, *supra*, F026937.) This homicide occurred in 1995. The fatal incident started because appellant's codefendant, Ramiro Ojeda, wanted to shoot and kill his rival, R.Y. Ojeda fired a rifle five times into a parked van that contained R.Y. and the homicide victim, Manuel Alcantar.

Earlier in the evening, appellant and Ojeda, along with a third individual, saw the van, but they could not tell if anyone was inside. They walked past the van. After determining R.Y. was inside, Ojeda left to get his gun. When Ojeda returned, they discussed what route to take to approach the van. Before the shots were fired, appellant held the rifle for Ojeda while Ojeda climbed a fence. Once Ojeda was over the fence, appellant handed the gun back to Ojeda and then he jumped the fence himself. Appellant was present when Ojeda fired.

R.Y. was injured as a result of Ojeda's attack. Alcantar, however, suffered a gunshot wound to his left lung and he died at a hospital.

In a series of interviews with law enforcement, appellant admitted that he was with Ojeda when the shots were fired, and his role was "probably" as a lookout. Appellant also admitted to law enforcement that he knew Ojeda wanted to kill R.Y., and appellant knew R.Y. was in the van before the shots were fired. Appellant gave Ojeda support and encouragement to go through with the shootings. Ojeda would not have done the shootings if he and the other individual had not stayed. Appellant backed up Ojeda "because Ojeda was a 'home boy' and this was pay back."

### II.     The Petition for Resentencing.

In 2021, appellant filed a petition for resentencing in the trial court. Appellant alleged that he could no longer be convicted of murder based on changes brought by

3.

Senate Bill 1437. The court appointed counsel to represent appellant. In 2022, the court found that appellant had stated a prima facie case, and it issued an order to show cause.

In 2023, the court held an evidentiary hearing. The court noted that appellant's jury had been instructed on the natural and probable consequences doctrine. The court ruled that appellant had aided and abetted Ojeda in this shooting. The court found that appellant had held his own intent to kill because he had admitted to law enforcement that he knew Ojeda wanted to kill R.Y., appellant had assisted Ojeda with the gun, and appellant had remained with Ojeda when the shots were fired. The court denied the petition for resentencing.

## DISCUSSION

### I. Senate Bill 1437 did not Abrogate the Doctrine of Transferred Intent and the Trial Court did not err.

Appellant contends that the trial court erred in denying his petition for resentencing. He maintains that he never intended for Alcantar's death, which he asserts was an accident. Appellant argues that, in denying his petition for resentencing, the trial court impliedly relied on the doctrine of transferred intent to find him guilty of murder. According to appellant, the doctrine of transferred intent may no longer be used to establish an accomplice's liability for murder.

This is an issue of first impression. We hold that Senate Bill 1437 did not abrogate the doctrine of transferred intent. Thus, the trial court did not err in denying the petition for resentencing, and we reject appellant's arguments. Before analyzing appellant's specific assertions, we summarize both the doctrine of transferred intent and the requirements to establish murder for an accomplice.

#### A.    *The doctrine of transferred intent.*

Under the doctrine of transferred intent, if a defendant shoots at one victim with malice aforethought, but instead kills someone else who is standing nearby, the defendant is deemed liable for murder notwithstanding the lack of intent to kill that decedent.

4.

(*People v. Sanchez* (2001) 26 Cal.4th 834, 850–851, fn. 9; *People v. Roberts* (1992) 2 Cal.4th 271, 317.) The transferred intent doctrine does not signify an actual transfer of intent from the intended victim to the unintended victim. (*People v. Sanchez*, *supra*, 26 Cal.4th at pp. 850–851, fn. 9.) Instead, this doctrine expresses a policy "that a defendant who shoots at an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark. [Citation.]" (*Ibid*.)

The transferred intent doctrine can be used to establish murder for the death of the unintended victim even when a defendant is charged with the attempted murder of the intended target. "Contrary to what its name implies, the transferred intent doctrine does not refer to any actual intent that is capable of being 'used up' once it is employed to convict a defendant of a specific intent crime against the intended victim." (*People v. Scott* (1996) 14 Cal.4th 544, 550.)

**B.      *The requirements to establish murder liability for an accomplice.***

An accomplice is one who acts with knowledge of the perpetrator's criminal purpose. To be an accomplice, a defendant must intend to aid and abet the perpetrator in committing a crime. The defendant must actually aid and abet the perpetrator's commission of that crime while knowing the perpetrator intended to commit the crime. (*People v. Gomez* (2018) 6 Cal.5th 243, 279; CALCRIM No. 401.) An aider and abettor is liable for the perpetrator's actions, as well as his own. (*People v. Gomez*, *supra*, 6 Cal.5th at p. 279.)

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) "Although malice is an element of murder, prior law permitted defendants who did not act with malice to be liable for murder under the natural and probable consequences doctrine. [Citation.]" (*People v. Jenkins* (2021) 70 Cal.App.5th 924, 931.) As such, an accomplice to a nonhomicide target offense could be

liable for murder if the direct perpetrator of the target offense committed murder and the murder was a natural and probable consequence of the target offense. (*Ibid.*) Thus, the natural and probable consequences doctrine permitted the accomplice to be convicted of murder without personally having malice aforethought. (*Ibid.*)

Effective January 1, 2019, the Legislature passed Senate Bill 1437. This amended both the felony-murder rule and the natural and probable consequences doctrine to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708; § 189, subd. (e)(1)-(3).) Malice may no longer be imputed to a person based solely on his participation in a crime. (§ 188, subd. (a)(3).)

Following Senate Bill 1437, a defendant may still be liable for murder as a direct aider and abettor because a direct aider and abettor must possess malice aforethought. (*People v. Gentile* (2020) 10 Cal.5th 830, 848, superseded by statute on other grounds as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.) In other words, Senate Bill 1437 had no impact on accomplice liability for murder under direct aiding and abetting principles. (*People v. Jenkins*, *supra*, 70 Cal.App.5th at p. 931.) An accomplice who directly aids and abets the perpetrator in committing murder is liable for murder under the new law just as he or she was liable under the old law. (*Ibid.*; accord, *People v. Offley* (2020) 48 Cal.App.5th 588, 596.)

### C.    *We reject appellant's arguments.*

Appellant argues that the theory of transferred intent "is similar" to the natural and probable consequences doctrine. He contends that the doctrine of transferred intent is a theory of imputed liability. He asserts that this doctrine is "incompatible" with the current law because a murder must be based on each person's own actions and subjective mens rea. He maintains that his intent to kill Alcantar was erroneously imputed to him.

6.

He argues that he was convicted under a legally invalid theory and reversal of his murder conviction is required.  We disagree.

To determine the legislative intent behind Senate Bill 1437, we look to the words of the statute, "giving them their usual and ordinary meaning."  (*People v. Flores* (2003) 30 Cal.4th 1059, 1063.)  We do not need to analyze further if the language of the statute is clear.  (*Ibid.*)  Where the words of a statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.  (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

Senate Bill 1437 amended section 188, which defines malice.  It also amended section 189, which defines the degrees of murder.  Finally, this bill added former section 1170.95, now renumbered as section 1172.6.[3]  (Stats. 2018, ch. 1015, §§ 2, 3.)  Nothing in the language of this bill demonstrates or even reasonably suggests that, when eliminating the natural and probable consequences doctrine, the Legislature also intended to abolish the doctrine of transferred intent.  There is no ambiguity in the statutory language.  Accordingly, we presume the Legislature meant what it said and the statute's plain meaning governs.  (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 640.)

Moreover, the doctrine of transferred intent existed at common law, and it was one of the common law doctrines that survived the enactment of California's murder statute in 1872.  (*People v. Bland* (2002) 28 Cal.4th 313, 320.)  The Legislature is deemed to be aware of existing laws in effect when it enacts legislation.  (*People v. Overstreet* (1986) 42 Cal.3d 891, 897.)  Thus, we presume the Legislature knew about this doctrine when it enacted Senate Bill 1437.  The Legislature, however, did not mention the doctrine of transferred intent, and we will not presume the Legislature intended to overthrow a long-

---

[3]     This created a procedural mechanism for those convicted under the former law to seek retroactive relief.  (§ 1172.6, subd. (a); *Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.)

established principle of law without making its intention clear. (*Reidy v. City and County of San Francisco* (2004) 123 Cal.App.4th 580, 591.)

Based on the plain statutory language, we reject appellant's suggestion that Senate Bill 1437 abrogated the doctrine of transferred intent. Likewise, we reject appellant's assertion that his murder conviction is based on a legally invalid theory.

The doctrine of transferred intent requires an intent to kill. (See *People v. Sanchez*, *supra*, 26 Cal.4th at pp. 850–851, fn. 9; *People v. Roberts*, *supra*, 2 Cal.4th at p. 317.) In contrast, the natural and probable consequences doctrine permitted an accomplice to be convicted of murder without malice aforethought. (See *People v. Jenkins*, *supra*, 70 Cal.App.5th at p. 931.) Appellant's jury was instructed on the doctrine of transferred intent. The prosecutor argued that doctrine to the jury as one path to establish appellant's liability for murder. In denying the petition for resentencing, the trial court impliedly relied on the doctrine of transferred intent to uphold the conviction for Alcantar's murder after finding appellant had held an intent to kill in assisting in the attempt on R.Y.'s life.

This record amply demonstrates that appellant held his own intent to kill. Appellant assisted Ojeda in sneaking up on the victims. Prior to this fatal encounter, appellant handled the murder weapon and he gave it to Ojeda before the shots were fired. Appellant remained with Ojeda throughout this crime. Appellant made statements to law enforcement that indicated he knew Ojeda intended to kill R.Y. before they snuck up on the victims. Appellant gave Ojeda support and encouragement to go through with the shootings. Appellant's culpability for murder was based on his own actions and his own malice, which the law requires. (See *People v. Gentile*, *supra*, 10 Cal.5th at pp. 846–847 [culpability for murder must be based on the defendant's own actions and subjective mens rea].)

Because appellant held an intent to kill when he aided and abetted this fatal shooting, he is guilty of murder for the unintended death caused as a result of his and

8.

Ojeda's criminal conduct. (See *People v. Bland*, *supra*, 28 Cal.4th at pp. 323–324 ["assuming legal causation, a person maliciously intending to kill is guilty of the murder of all persons actually killed"].) The court properly denied the petition for resentencing.

Finally, we note that in 2009, and well before enactment of Senate Bill 1437, our high court stated that a defendant's intent to kill may be "imputed" through the doctrine of transferred intent. (*People v. Concha* (2009) 47 Cal.4th 653, 664 (*Concha*).) Appellant points to the word "imputed" in the *Concha* opinion to argue that the doctrine of transferred intent violates current law because malice may no longer be "imputed to a person" based solely on his participation in a crime. (§ 188, subd. (a)(3).)

We disagree that the word "imputed" in the *Concha* opinion establishes that appellant was improperly convicted of murder. The high court in *Concha* made it very clear that, based on policy reasons, " 'a defendant who shoots at an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark.' [Citation.]" (*Concha*, *supra*, 47 Cal.4th at p. 664.) We have already held that nothing suggests the Legislature intended to eliminate the doctrine of transferred intent when it enacted Senate Bill 1437. *Concha* used the word "imputed" almost a decade before Senate Bill 1437 went into effect. Cases are not authority for propositions not considered or decided. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134.)

Based on this record, the trial court properly denied the petition for resentencing. While knowing that Ojeda wanted to kill R.Y., appellant assisted Ojeda in firing shots at the vehicle in which they knew R.Y. was present. As such, appellant held his own intent to kill, and malice was not imputed to him. As a matter of law, the intent to kill R.Y. was transferred when the shots fatally struck Alcantar, who was an unintended victim. (See *People v. Sanchez*, *supra*, 26 Cal.4th at pp. 850–851, fn. 9; *People v. Roberts*, *supra*, 2 Cal.4th at p. 317.) Appellant is subject to the same criminal liability that would have

been imposed had the shots killed R.Y.  (See *People v. Sanchez*, *supra*, at pp. 850–851, fn. 9.)  Consequently, appellant's various assertions are without merit and this claim fails.

## DISPOSITION

The trial court's order denying the resentencing petition is affirmed.


LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


DE SANTOS, J.